**HAVEMEYER et al. v. PUBLIC SERVICE COMMISSION OF PUERTO RICO et al.**
**No. 2905.**

Circuit Court of Appeals, First Circuit.
Jan. 10, 1935.

Ralph S. Rounds, of New York City (Francis E. Neagle and Rounds, Dillingham, Mead, Neagle & Boyd, all of New York City, on the brief), for appellants.

William Cattron Rigby, of Washington, D. C. (Benjamin J. Horton, Atty. Gen., of Puerto Rico, and Nathan R. Margold, of Washington, D. C., on the brief), for appellees.

Before BINGHAM, WILSON, and ANDERSON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a final judgment of the Supreme Court of Puerto Rico, affirming a judgment of the District Court of San Juan, dismissing an appeal by the appellants from an order of the Public Service Commission of Puerto Rico, and affirming the order of the commission. This court has jurisdiction to review this case on either of two grounds: (1) That the construction of a United States statute, or (2) the necessary jurisdictional amount is involved. Municipality of Rio Piedras v. Serra, Garabis & Co., Inc. (C. C. A.) 65 F.(2d) 691.

It is urged by counsel for the appellees that the individual appellants, as members of the Sociedad en Comandita, Russell & Co., a form of limited partnership, organized under the Code of Commerce of Puerto Rico (1930) § 95, have no standing here as appellants, since the Supreme Court in People of Puerto Rico v. Russell & Company et al., 288 U. S. 476, 53 S. Ct. 447, 77 L. Ed. 903, held that it was a juridical entity, at least, for the purpose of giving the insular courts jurisdiction, it having its domicile in Puerto Rico. It is of no importance whether the individual members of Russell & Co. are parties to this appeal.

The order to show cause was issued to "Russell & Company, S en C, a limited partnership." That company is here. Throughout the entire proceedings it has been designated as a civil agricultural partnership, or a limited partnership, as it appears it is, sections 125, 156 of the Commercial Code, Civil Code (1930) § 1590, and every order and judgment has been against it in that capacity. It is too late now to raise the point. Russell & Co. as a Sociedad en Comandita, having been proceeded against and consented to be treated in the proceedings as a civil agricultural partnership, we think it may be

considered bound by whatever judgment may be rendered.

The facts found by the Supreme Court, briefly stated, are as follows: The executive council of Puerto Rico in 1901 granted to the Guanica Land Company, a New Jersey corporation, and its assigns, a franchise whereby it was authorized to take 20,000,000 gallons of water daily from Guanica Lake, but solely for the proper irrigation of lands owned or leased by it.

More particularly the franchise provides:

"I. That the Guanica Land Company, (a corporation organized and existing under and by virtue of the laws of the State of New Jersey), and its successors and assigns, be and they are hereby authorized and empowered to erect, construct, maintain and operate a dam of masonry work or other proper materials across the Cano Negro, or outlet from the Lake of Guanica, in the Municipality of Yauco and upon such lands of abutting owners as may have been acquired by consent or by process of law, for the purpose of retaining, storing and conserving the waters of the said Lake of Guanica, and of restraining and regulating the flow of the water from said Lake, through the said Cano or otherwise, for the purposes hereinafter set forth.

"II. That the said Company and its successors and assigns be and they hereby are authorized to take from the said Lake of Guanica, or from the said Cano or outlet, such quantity of water not exceeding 20,000,000 gallons during each day, as shall be necessary or sufficient for the proper irrigation of the lands now or hereafter owned or leased by the said Company, or by its successors or assigns, or any of them. The water so to be taken from the said Lake or Cano may be taken from such part or parts thereof, adjacent or contiguous to said lands, as the said Company or its successors or assigns may see fit, and may be taken by gravity through proper channels, or by pumps, or by any other method that may be advisable, or by any two or more of such methods.

"III. That the said Company and its successors and assigns may erect, construct, operate and maintain upon those parts of the lands now or hereafter owned or leased by it or them, which lie within six meters of the bank of the said Cano, or within twenty meters of the shore of the said Lake or of the harbor or bay of Guanica, such pumping station, channels and pipe lines as may be necessary or proper for the taking or conveyance of said waters; Provided that no public road lying within or partly within said limits shall be obstructed to any extent whatever thereby.

"IV. That nothing herein contained shall be held or construed to authorize or permit the said Company or its successors or assigns to raise or maintain the level of the waters of said Lake of Guanica above the customary level thereof during the rainy season, as the same exists in years of average and usual rainfall; and all damage sustained by abutting owners by reason of unduly raising the level of the waters of said Lake, or by unduly lowering the level of the waters of said Lake, shall be borne by the said Company, its successors and assigns and action for damages shall lie against said Company, its successors and assigns for such damage by such abutting owners, in any court of competent jurisdiction."

It also authorized the Guanica Land Company to construct a private railroad for the transporting of its own products to a private wharf in Guanica Harbor, which it was authorized to construct, having first obtained permission of the Secretary of War.

It appears in the record of the proceedings that at some time prior to 1917, the Guanica Land Company assigned the entire franchise to the Guanica Central, which afterward assigned it to the Ensenada Estates, Inc., which assigned to Russell & Co. that part of the franchise authorizing the taking of 20,000,000 gallons of water daily from Guanica Lake; that is, "to be more specific, the rights contained under paragraphs I to IV, inclusive, of said franchise."

In 1929 the municipality of Lajas in Puerto Rico adopted a resolution which it forwarded to the Public Service Commission of Puerto Rico, complaining that by reason of engineering work carried on in Negro pond, which is the outlet of Guanica Lake, the lands and public roads in the municipality of Lajas had been flooded for a long period of time. The Governor of Puerto Rico also called the attention of the commission to the flooded condition of the lands in Lajas by forwarding a letter from the Commissioner of the Interior, in which it is claimed that the increased volume of water in the lake was due to a violation of the terms of the franchise granted to the Guanica Land Company in 1901.

Upon these complaints the commission issued a show cause order to Russell & Co., the Ensenada Estates, Inc., and the Guanica

Central, and any other person or legal entity having any rights in the above franchise, to appear and show cause why the franchise granted to the Guanica Land Company in 1901 should not be canceled.

The South Porto Rican Sugar Company, a domestic corporation of Puerto Rico, apparently having acquired rights under the franchise to the railroad and wharf, and Russell & Co. as a Sociedad en Comandita, appeared specially and filed a motion to dismiss the proceedings before the commission on the following grounds:

"1. That the Public Service Commission lacks jurisdiction over this case and that it does not have jurisdiction to cancel the franchise mentioned in the order to show cause issued by the Commission on May 26, 1928.

"2. That none of the parties appearing in this cause is a public service corporation or a public service partnership, or is engaged in any manner in public service, and that this Commission does not have jurisdiction over these parties or over any one of them."

The motion was denied and, after hearing, the commission issued its order that so much of the franchise issued to the Guanica Land Company, which refers to the taking of water from Guanica Lake for purposes of irrigation, should be canceled, but to take effect nearly four months later. The order provided that in the meanwhile the parties in interest would be permitted to file further petitions requesting the commission to fix the highest point at which the waters of Guanica Lake could be maintained by owners of the franchise, which, of course, they could not do without conceding the jurisdiction of the commission, which they still deny.

From this order, Russell & Co. appealed to the District Court of San Juan, assigning as errors by the commission: (1) That the commission was without jurisdiction in the premises, since neither the Guanica Land Company nor the civil agricultural partnership, Russell & Co., was a public or quasi public corporation, and the franchise granted was entirely of a private nature and its amendment, modification, or cancellation was not within the powers vested in the commission under section 38 of the Organic Act of 1917 (48 USCA §§ 750, 751, 753); (2) that the commission erred in not holding that the floods in the valley of Lajas were caused by torrential and extraordinary rains, or a vis major; (3) that the commis-

sion erred in holding that any work done by Russell & Co. within the bed of the Rio Loco contributed to the height of the waters in Guanica Lake; (4) that the commission erred in holding that Russell & Co. was bound to know the natural level of the waters in the lake, above which they should not permit the waters of the lake to be raised, except in case of extraordinary rains. These and many other errors were assigned on appeal to the District Court of San Juan. The District Court, however, held that the issues before it on the appeal were confined to (1) whether the commission had jurisdiction and authority to make the order canceling so much of the franchise as related to the taking of water from Guanica Lake; (2) whether the order of the commission was based on competent evidence; and (3) whether the order canceling so much of the franchise as authorized the taking of water from the lake was reasonable.

The jurisdiction of the commission, the District Court held, was established by the opinion of this court in South Porto Rico Sugar Company et al. v. Munoz et al., 28 F.(2d) 820, in which the South Porto Rico Sugar Company, as one of the parties interested and appearing before the commission, sought an injunction to restrain the commission from acting on the complaint of the municipality of Lajas at all.

The District Court of San Juan further held that, as the order of the commission was presumptively reasonable, it must be sustained unless clearly shown to be unjust and unreasonable; and, after a consideration of the evidence before the commission, the District Court held that the order was both reasonable and in conformity to law.

From this judgment, Russell & Co. appealed to the Supreme Court of Puerto Rico, which affirmed the judgment of the District Court.

The assignments of error on the appeal to the Supreme Court of Puerto Rico are not printed in the record, but from the opinion of the court it appears that the same issues were raised in that court as were raised in the District Court, viz.: (1) That the commission was without jurisdiction to order the cancellation of the franchise as to the water rights in Guanica Lake; (2) whether it was based on competent evidence; and (3) was reasonable.

The issue of jurisdiction was also disposed of in the Supreme Court as settled by the opinion of this court in South Porto Rico Sugar Company et al. v. Munoz et al.,

supra. As no question was raised as to whether the order of the commission was based on incompetent evidence, the Supreme Court held that the issues before it were limited to the reasonableness of the order, whether it was supported by the evidence and whether it was in conformity to law.

Before the Supreme Court, counsel for the appellants contended that neither clause I nor clause IV of the franchise granted to the Guanica Land Company imposed on the grantee the positive duty to maintain the waters of the lake at or below a certain level, when it was provided in clause I that it might construct a dam at the outlet of the lake, and in clause IV that nothing contained in the franchise should be construed to authorize or permit the grantee or its assigns to raise or maintain the waters of the lake above the customary level thereof during the rainy season; and contended that it had done nothing that would cause the level of the waters of the lake to be raised above such customary level.

The Supreme Court, however, held that: "This clause (IV) not only prohibits the grantee from exceeding said level, but it also compels the same to avoid the waters of the lake from exceeding said level, for which reason this franchise necessarily gave to the grantee and its successors the management and control of Negro Pond so as to regulate and maintain said level, and consequently, the duty to carry out any acts necessary to keep such level."

While the Supreme Court found that there was no evidence that the appellants did any positive acts to close the outlet, it did hold that if the outlet to Guanica Lake had become closed by soil carried down by the Loco river, which it appears the commission found that the appellants improved so as to produce a greater flow of water into Guanica Lake, it was the duty of the appellants to open the outlet in order to lower the level of the lake in times of excessive rains. It concluded that the order of the commission was reasonable and in conformity to the law.

It is from these rulings that the appeal was taken to this court. The assignments of error may be summarized under three groups:

(1) That the commission was without jurisdiction and authority to make the order canceling the franchise; (2) that the Supreme Court erred in construing clause IV of the franchise as imposing on the appellants any affirmative duty to lower the flood waters of the lake; and (3) that the order canceling the franchise was not reasonable.

The contention of the appellants as to the jurisdiction of the Public Service Commission is that that commission had jurisdiction only over public service corporations; that Russell & Co. is not a public service corporation and therefore the commission was without jurisdiction or authority to cancel the franchise it held. The jurisdiction and authority of the Public Service Commission to cancel the franchise in question was raised at the very threshold of these proceedings, and was considered and passed upon by this court in South Porto Rico Sugar Co. et al. v. Munoz, 28 F.(2d) 820. We are content to abide by the decision there made as to the jurisdiction of the commission.

In the Munoz Case (in which Russell & Co., S en C, was also a party plaintiff and the Public Service Commission a party defendant), and apparently throughout this entire litigation, it was and has been assumed without question that the right to take waters from Guanica Lake and Cano Negro to the extent of 20,000,000 gallons per day, and to erect pumping stations and canals, and for that purpose acquire by eminent domain private lands, was of a public or quasi public nature and could not be exercised by Russell & Co. in the absence of such a grant, either from the executive council or its successor, the Public Service Commission. This assumption was unqualifiedly approved in the brief of the appellants filed in the Munoz Case and also in this case, where counsel, in speaking of the irrigation franchise, stated that "the grantee (Russell & Co.) could not make use of the water in question (except by prescriptive right), even though it owned the land on both sides of the Cano Negro and the Lake of Guanica, without getting a concession from the Government of Puerto Rico, for the waters of lakes and rivers are of the public domain (Law of Waters, Revised Statutes and Codes of Porto Rico, § 2390, p. 459)"; that is, that the waters of Cano Negro and of Guanica Lake are public waters. This being so, the grant of the right to take the waters now held by Russell & Co. was a grant of a franchise of a public or quasi public nature within the meaning of section 32 of the Foraker Act (31 Stat. 83), section 3 of Joint Resolution No. 23 of Congress of May 1, 1900 (31 Stat. 715, 716), Laws of Porto Rico 1916, p. 17, sections 38 and 39 of the Jones Act ([Organic Act]

39 Stat. 964 [48 USCA §§ 750, 751, 753, 752]) ; and this is so even though Russell & Co. is not a public service corporation, for in the matter of holding back and taking waters from these sources, it is exercising a function of a public or quasi public nature.

If this were not so, the errors assigned and the questions argued as to the jurisdiction and power of the Public Service Commission to revoke the concession, or any of the other questions sought to be raised, would be purely academic and unworthy of any consideration, for neither the executive council nor the Public Service Commission would have authority to grant such a concession, and Russell & Co. would have acquired nothing by the grant and there would be nothing to revoke.

This view of the question of the public nature of the grant is recognized in section 52 of the Act of the Legislature of Puerto Rico of December 6, 1917 (Act No. 70, Laws of Puerto Rico, 1917, vol. 2, p. 512), where it says:

"The commission shall have power to grant franchises, rights, privileges or concessions for public or quasi public purposes, including the right * * * to grant franchises, rights, privileges or concessions for the use of public waters for public or private purposes. * * *"

And in this aspect it is of no consequence whether Russell & Co. is or is not a public service corporation.

■ Furthermore, the sentence in section 38 of the Jones Act (Organic Act), 48 USCA § 750, out of which to a large extent this discussion arises—"The said commission is also empowered and directed to discharge all the executive functions relating to public-service corporations conferred by law prior to March 2, 1917, upon the executive council"—does not refer to such executive functions as having been conferred by an Act of Congress over public service corporations, as neither the Foraker Act, nor the Joint Resolution, nor any law of Congress called to our attention, expressly conferred any such functions upon the executive council. While it may have related to the executive functions impliedly conferred on the executive council by the Joint Resolution of 1900, it may well have referred to the executive functions conferred on the executive council relating to public service corporations under the Act of March 12, 1908, entitled, "An Act Concerning the regulation of public service corporations in Porto Rico." See Revised Statutes and Codes of

Porto Rico, pages 72–79 (section 338 et seq.), and particularly sections 3–10 of the act (sections 340–347). Section 6 of that act, as amended (Act of March 9, 1911, at page 115, Revised Statutes and Codes of Porto Rico, § 343), provides:

"Whenever in the case of any public service corporation operating under a grant of any character whatsoever, any power has been reserved to the government or to any official authority or public body, whether such government, public body or official now is in existence or exercises authority in the Island of Porto Rico or not, to exercise any supervision or control over said corporation or to approve of any tariff of charges, rule or regulation or condition or operation, or to amend, alter or repeal any such grant, then this power shall, on and after the date of passage of this act, be deemed to be vested in the Executive Council; and said Executive Council shall have all the powers heretofore so reserved to any government public body, or public official, and when, in such grant or grants, conditions have been imposed upon the grantee, and such conditions have not been faithfully observed or hereafter may not be faithfully observed, the Executive Council shall have power to annul or repeal said grant, or to take such other action as in its opinion is proper in respect to the matter, provided such conditions shall not have been fully complied with within the reasonable time allowed therefor."

It thus appears that in section 38 of the Jones Act (Organic Act) of March 2, 1917, Congress expressly recognized the power of the Legislature of Puerto Rico to legislate with reference to the enforcement of a grant of a franchise for public service corporations; and if the Legislature of Puerto Rico had the right to enact such legislation, there can be little doubt but that it had authority to enact section 60 of Act No. 70, of December 6, 1917, in which it was provided:

"Section 60—*Violation of Existing Franchises*—Nothing in this article shall be construed to violate the provisions of any franchise that may have been granted by the Executive Council and is now in force; Provided, however, that the (Public Service) commission shall have the power to alter, amend, modify or repeal such franchises, and shall exercise all the rights and powers reserved to the Executive Council by any such franchise or privilege, or by any law."

At least, Congress does not appear to have questioned it when the enactment of the law was reported to it.

And, inasmuch as the Legislature of Puerto Rico, under the authority granted to it in the Organic Act (39 Stat. 958, 964, §§ 25, 37, 48 USCA §§ 811, 774, 821), was authorized to enact legislation looking to the enforcement of the provisions of the Organic Act relating to franchises and not inconsistent therewith, whether the grantee thereof be an individual, a juridical entity, or a public service corporation, there can be no reasonable doubt as to the jurisdiction and authority of the Public Service Commission, at least, to alter or amend the franchise in question, when reasonable grounds are shown to exist, and that the amendment of March 4, 1927 (chapter 503, § 6, 44 Stat. 1420) to section 38 of the Organic Act of 1917 (48 USCA §§ 750, 751, 753), purporting to confer upon the Legislature power to enact such legislation, was enacted by Congress out of abundant caution.

We are of the opinion that, under the circumstances and upon the facts found by the commission and accepted by the Supreme Court as a basis for its opinion, there was neglect on the part of the appellants to act when it became evident that the waters of the lake were being held up beyond the customary level by the conditions that had arisen in Negro pond, over which they had control, especially when by their improvements in the Rio Loco a large quantity of silt and refuse, as the commission found, was deposited at the outlet of the lake, and a greater volume of water was emptied in the lake in case of heavy rains than previously.

■ While they did not do any acts with the deliberate intent of holding back the waters of Guanica Lake above their natural level, they must, in 1926 or 1927, have been aware that, as a result of the accumulation of débris and sediment, an artificial dam had been raised at the outlet of the lake, and that the waters of the lake were thereby raised and maintained during the years 1927, 1928, and 1929 at a higher level than was customary following even unusual seasonal rains. With the knowledge of these facts, they permitted the artificial dam to remain, which accomplished the same purpose as a masonry dam created by their own acts. We think it was not unreasonable for the Supreme Court to find that the appellants had knowingly permitted the artificial dam thus created to remain, since they had control over Negro pond and the outlet of the lake; and in thus permitting it to remain and to raise and keep the waters of the lake above the customary level, their action was unauthorized under the franchise granted to them, especially as they had by positive acts increased the flow of water, silt, and refuse into the lake via the Loco river.

Counsel for the commission contends that the reasonableness of the order is not open for consideration by this court, although it is expressly made an issue before the insular courts under section 85 of the Public Service Act of Puerto Rico. The cases cited by counsel are not in point, of which Keller et al., constituting the Public Utilities Commission of the District of Columbia v. Potomac Electric Power Company et al., 261 U. S. 428, 43 S. Ct. 445, 67 L. Ed. 731, is an example. In this case the District of Columbia courts were vested with the power, after considering the order of the commission, to amend it, to enlarge the valuations, and to increase the rates established by the commission. Obviously, a legislative power to fix rates was there vested in the court, and its acts in so doing were not judicial but legislative; and from its decision no appeal could lie to the federal Supreme Court, which can only consider judicial questions.

■ The Public Service Act of Puerto Rico vests no legislative or executive powers in the insular courts under section 85 of the act. The District Court of San Juan on appeal has no power to change the order of the commission. If it is not reasonable, or does not conform to the law, or is based on incompetent evidence, it can only reverse, or in its discretion remand, it to the commission, which alone has the legislative or executive power to change it.

The Supreme Court in the case of Pacific Tel. & Teleg. Co. v. Kuykendall, Director, etc., 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975, made clear this distinction. In that case two sections of the statutes of the state of Washington were involved, each differing in the powers vested in its court. Under section 10428 (Comp. Stat. 1922), in case of an order of its commission fixing rates, on appeal to the court for the purpose of having its reasonableness and lawfulness determined, the court could, as under the Puerto Rico Public Service Act, only affirm, reverse, or remand. The court said, page 200 of 265 U. S., 44 S. Ct. 553, 555:

"It is clear that the function to be performed by the superior court under this sec-

tion is judicial. It does not fix rates or enter a new order as to them. It does not pass on the sufficiency or weight of evidence. It only looks into the reasonableness and lawfulness of the order of the commission, and is to determine whether evidence which should have been received was rejected, and in that case is to send the case back to the commission for a new order. The court does not act legislatively."

While under section 10441 of the Comp. Stat. (1922) of Washington, in fixing the valuation of utility properties, the state court is also made a part of the valuation tribunal and can pass on the weight of the evidence and set aside the valuation of the commission and make a new one. In such case the Supreme Court said, page 202 of 265 U. S., 44 S. Ct. 553, 556:

"It is clear that the function of the courts in fixing the valuation of the property of the public utility is not confined to a judicial review of the work of the commission."

■ It is clear, we think, that under the Public Service Act of Puerto Rico, the insular courts on appeal from the Puerto Rican Commission act judicially in determining whether its orders are reasonable, are in conformity with the law, and are based on competent evidence; and the same issues, on appeal from the Supreme Court of Puerto Rico, may be raised in this court.

■ Under the circumstances disclosed by the record, the absolute cancellation of that part of the franchise pertaining to the use of the waters of the lake would, in our opinion, be an arbitrary and unreasonable act, if it involved, as it may have, a taking of a valuable property right acquired by the appellants under the franchise, viz., the right to take 20,000,000 gallons of water daily from Guanica Lake. See Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357; Berea College v. Kentucky, 211 U. S. 45, 57, 29 S. Ct. 33, 53 L. Ed. 81; Fair Haven & Westville R. Co. v. New Haven, 203 U. S. 379, 388, 27 S. Ct. 74, 51 L. Ed. 237; Com. v. Essex Co., 13 Gray (Mass.) 239; Chicago, Milwaukee & St. Paul R. Co. v. State of Wisconsin, 238 U. S. 491, 35 S. Ct. 869, 59 L. Ed. 1423, L. R. A. 1916A, 1133. To avoid future damages from flowage of lands in Lajas, it was only necessary to amend or modify the franchise by requiring the establishment of a gauge above which the waters should not be permitted to be raised by the owner of the franchise, except during periods of extraordinary rains, and for a period sufficient to permit the excessive waters to be reduced in due course to the height of the gauge so established. The appellants in their answer before the commission set forth—without admitting any obligation so to do—that they had already taken proper steps to lower the waters of the lake, and to guarantee that in the future the waters would not go beyond the customary level. The establishing of a maximum height to which waters may be impounded is a comparatively simple thing to do, and a common requirement, where rights of flowage are obtained, and is in accord with the obvious spirit and intent of the grant in this case.

■ While it was, no doubt, with this in mind that the commission postponed the taking effect of its order, which carried with it the implication that it would agree to an amendment of the franchise requiring the waters of the lake to be maintained at or below a certain level, except during the periods of excessive rains, which alteration or amendment we think it had power to make; and while we cannot assume, notwithstanding the delay caused by the appeals, which we think were taken in good faith, that the commission will not act in fairness to the appellants in allowing an amendment or modification of the franchise and grant a further extension of time in which they may file a petition requesting and consenting to an amendment to the franchise imposing a reasonable limitation on the height at which the waters of the lake may be maintained, we nevertheless think a proper procedure in this case will be to reverse the judgment of the Supreme Court. The commission may then proceed upon the evidence before it, and, upon further investigation, establish a reasonable limitation upon the height at which the waters of the lake may be maintained, and amend the franchise of the appellants so as to restrict their right to hold the waters back under normal conditions at a higher level than the height so fixed. From the record in this case it is apparent that the appellants and the commission will be able to agree on a definite level to accomplish this purpose.

The judgment of the Supreme Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion, but without costs.