RUSSELL & Co., SUCRS., apelada, *v.* COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO y DEPARTAMENTO DE AGRICULTURA Y COMERCIO DE PUERTO RICO, apelantes.

Núm. 9090.—*Sometido:* Marzo 25, 1946. *Resuelto:* Junio 28, 1946.

———

*Tomás Torres Pérez,* abogado de los apelantes; *James R. Beverley, R. Castro Fernández* y *José López Baralt,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA emitió la opinión del tribunal.

#### EN RECONSIDERACION

Los causantes de la sociedad apelada solicitaron y obtuvieron de la apelante, Comisión de Servicio Público, una franquicia para utilizar las aguas de la Laguna Guánica para fines de riego. Posteriormente la Comisión ordenó a la apelada mostrara causa por la cual no debía cancelarse la franquicia por el fundamento de haber la apelada violado una de sus condiciones. La apelada compareció y negó haber violado la franquicia. Visto el caso, la Comisión determinó que se había violado una de las condiciones de la franquicia, y dictó resolución cancelando la franquicia, resolución que fué apelada y en definitiva confirmada por las cortes.[1]

Algunos años después de terminado el litigio cuya historia acabamos de exponer, comenzó el que nos ocupa. Se inició con una querella informal, radicada ante la Comisión

[1] *Havemeyer* v. *Comisión Servicio Público,* 45 D.P.R. 698; *Havemeyer* v. *Public Service Commission of Puerto Rico,* 74 F.2d 637; *Commission* v. *Havemeyer,* 296 U.S. 506, 80 L. Ed. 357.

de Servicio Público por el Jefe de la División de Ornitología y Piscicultura, que en lo pertinente rezaba así:

"La laguna de Guánica, según tengo entendido, pertenece a la firma Russell & Co. la cual por disposición del Tribunal Supremo de los Estados Unidos deberá poseer franquicia de la Comisión de Servicio Público para utilizar las aguas de dicha laguna para fines de riego, lo cual a mi entender está actualmente haciendo sin haber obtenido la correspondiente franquicia."

A base de esa querella, expidió la Comisión una orden dirigida a Russell & Co. para mostrar causa por la cual estaba "utilizando esas aguas sin haber obtenido previamente una franquicia de la Comisión de Servicio Público." Compareció Russell & Co. y expuso: (1) Que era dueña de las aguas, (2) Que la Comisión carecía de jurisdicción para conocer del caso, por no tratarse de aguas de dominio público, (3) Que no era cierto, según se alegaba en la querella, que el Tribunal Supremo hubiese resuelto que Russell & Co. necesitara franquicia para usar las aguas.

Durante la vista que se celebrara, los miembros de la Comisión inquirieron del abogado de Russell & Co. si en el pleito anterior se había resuelto si era necesaria o no una franquicia. El abogado contestó que ese punto no se suscitó, y que su contención era que ni entonces ni ahora se necesitaba una franquicia para utilizar las aguas, por pertenecer éstas a la apelada Russell & Co. Presentó ésta prueba demostrativa de que las aguas le pertenecían, siendo ésa la única prueba practicada. No aparece que El Pueblo de Puerto Rico fuese notificado de la vista, ni que compareciera.([2])

La Comisión resolvió que, " . . . asumiendo para los fines de esta orden que los terrenos y el álveo o fondo de la La-

([2])En *In Re Herminia Colón Vda. de Semidey, etc.*, 59 D.P.R. 248, distinguimos entre la Comisión de Servicio Público, como agencia con facultad para conceder franquicias para el uso de aguas públicas, y El Pueblo de Puerto Rico como dueño de las aguas públicas y por lo tanto parte interesada en las franquicias. Véase también *Bactjer* v. *Corte*, 56 D.P.R. 596, 58 D.P.R. 422.

guna Guánica pertenece exclusivamente a la entidad Russell & Co., Sucrs., y que las aguas contenidas en esa laguna son de dominio privado, el uso de ellas, que haga necesario . . . construcción de obras, que hace variar el curso natural de las aguas en perjuicio de tercero, hace necesario legalmente la previa obtención de una franquicia de la Comisión de Servicio Público'', y ordenó a Russell & Co. cesara en el uso de las aguas hasta tanto obtuviese una franquicia.

Apeló Russell & Co. a la Corte de Distrito de San Juan, la cual dictó sentencia dejando sin efecto la orden de la Comisión, por entender que según la prueba las aguas pertenecen a Russell & Co. y que la Comisión carece de facultad para prohibir el uso de las aguas por su dueño. De la sentencia de la Corte de Distrito radicó la Comisión la apelación que ahora nos ocupa.

La apelación de la Comisión presentó el caso ante esta Corte en la siguiente forma (copiamos de su alegato):

''La Corte de Distrito de San Juan . . . se limitó a considerar dos puntos legales o sea:

''(1) A quién pertenece la Laguna Guánica; en otras palabras, ¿es una laguna de dominio público o de dominio privado?

''(2) Si es una laguna de dominio privado ¿puede la Comisión de Servicio Público prohibir el uso de sus aguas a su legítimo dueño?

''Acerca de esas dos cuestiones trata la opinión de la Corte de Distrito de San Juan.

''Opinamos que la decisión de la primera cuestión, sea lo que sea, es correcta, mas no así la decisión de la segunda cuestión.

''Señalamos como error lo siguiente:

''Entendemos que la Corte de Distrito de San Juan ha resuelto que la Comisión de Servicio Público no puede prohibir ciertos usos de aguas privadas o sea resolver que una laguna formada en un predio privado por aguas pluviales puede ser usada sin limitación.''

El 27 de noviembre de 1945 resolvimos la apelación revocando la sentencia apelada, por entender (1) que en el litigio anterior se determinó la naturaleza pública de las aguas de la Laguna Guánica, (2) que esa adjudicación an-

terior fué planteada ante la Comisión, y que aunque constituye una defensa que, de no ser afirmativamente planteada queda renunciada, en este caso no fué renunciada.

La apelada, Russell & Co., solicitó entonces la reconsideración de nuestra sentencia, porque (1) No habíamos resuelto la cuestión de si la Comisión tenía o no jurisdicción para dictar la orden que dictó, (2) La adjudicación en el litigio anterior no determinó que las aguas fueran públicas, (3) La defensa de *res judicata* no fué planteada, ni se presentó prueba que pudiera establecerla. Aunque la otra parte fué notificada de la moción de reconsideración, y de la vista que se celebró para oír a las partes sobre la misma, ni compareció a la vista ni ha radicado escrito alguno en oposición.

Tenemos serias dudas de que la decisión en el litigio anterior adjudicara que las aguas de la Laguna Guánica son públicas, y aunque así se hubiera adjudicado, también es muy dudoso que la Comisión apelante haya establecido adecuadamente esa defensa afirmativa, particularmente en vista de que en su apelación a este Tribunal renunció tácitamente a cualquier ventaja que pudiera brindarle la adjudicación anterior. No es necesario, sin embargo, que resolvamos estos dos puntos, pues hemos llegado a la conclusión de que la sentencia apelada debe confirmarse, ya que, sean de dominio privado o público las aguas de la Laguna Guánica, la Comisión carece de jurisdicción para determinar la naturaleza y extensión de los derechos, públicos o privados, a esas aguas, ni para prohibir a nadie que las use. Es cierto que la cuestión jurisdiccional no ha sido debidamente planteada por la apelada, quien se limitó a objetar, ante la Comisión y ante nosotros, que la Comisión carecía de jurisdicción por tratarse de aguas privadas, cuando la cuestión que se ha pretendido determinar era precisamente si eran privadas o públicas, particularmente en vista de la adjudicación anterior. Pero tratándose de una cuestión jurisdiccional, podemos y debemos considerarla aunque no haya sido planteada.

 La jurisdicción de la Comisión de Servicio Público, según aparece de las secciones 38 y 39 del Acta Orgánica y de la Ley de Servicio Público de 6 de diciembre de 1917 y leyes suplementarias, puede dividirse en dos campos: el campo de la reglamentación de los servicios públicos y compañías de servicio público, en el cual se confieren a la Comisión amplios poderes,[3] y el campo de la concesión de franquicias y privilegios de carácter público o cuasi público.

Es obvio que en este caso no se trata de la reglamentación de un servicio público, ni de una compañía de servicio público, ya que de los autos aparece que Russell & Co. se dedica a la agricultura y utiliza las aguas de la Laguna Guánica para el riego de sus propias tierras. La intervención de la Comisión en este caso no puede por lo tanto fundarse, ni ha pretendido la Comisión fundarla, en los poderes de la Comisión sobre las compañías de servicio público y los servicios públicos en sí.

Veamos si los poderes de la Comisión respecto a la concesión de franquicias le confieren jurisdicción suficiente para prohibir a una persona el uso de aguas, públicas o privadas, sin antes obtener una franquicia. Las facultades de la Comisión en este respecto emanan del artículo 38 del Acta Orgánica, que en lo pertinente dispone que "Toda franquicia, derecho, privilegio y concesión de carácter público o cuasi público, será otorgada por una Comisión de Servicio Público . . .", y del artículo 52 de la Ley de Servicio Público de 1917 que reza así:

"*Concesiones que se hicieren.*—La Comisión tendrá poder para otorgar franquicias, derechos, privilegios o concesiones para fines públicos o cuasi-públicos incluyendo el derecho de usar o cruzar carreteras, caminos o cauces de agua públicos; y para otorgar franquicias, derechos, privilegios o concesiones para el aprovechamiento de las aguas públicas para fines públicos o particulares. No estará facultada para conceder el dominio o aprovechamiento de terrenos o

---

[3] Véase *Rivera* v. *Lugo, Alcaide,* 53 D.P.R. 684.

propiedades públicas o para otorgar franquicias, derechos, privilegios o concesiones para usos particulares, excepción hecha del aprovechamiento de aguas públicas, sin la aprobación de la Asamblea Legislativa.''

No hay duda, pues, de la facultad de la Comisión para conceder franquicias para el uso de aguas públicas, y en casos apropiados para enmendarlas y revocarlas. Pero la facultad de conceder una franquicia para el uso de bienes de dominio público, que es esencialmente una función legislativa, no conlleva de por sí la facultad de determinar si una persona puede o no hacer uso de bienes que se consideran públicos sin franquicia, que es esencialmente una función judicial. La legislatura puede, por ejemplo, conceder a una persona permiso para utilizar terrenos públicos. Pero si alguien utiliza terrenos que son, o que el estado considera que son, públicos, sin tener franquicia para ello, no es a la legislatura sino a las cortes que incumbe entender en la controversia que con ese motivo surja entre el estado y esa persona. Otro ejemplo de la diferencia entre la facultad de conceder una franquicia o privilegio, y la de intervenir con aquellos que sin ostentar la franquicia pretenden actuar como si la tuvieran, lo ofrece la franquicia o privilegio de exención de contribuciones a industrias nuevas. La legislatura ha delegado el poder de la concesión de tales franquicias a la Comisión de Servicio Público.[4] Pero si alguna industria, sin tener tal franquicia, se obstinase en no pagar contribuciones, es obvio que la Comisión carecería de jurisdicción para obligarla a pagar, o para intervenir en forma alguna en el asunto. Aunque no pretendemos decir que los ejemplos citados sean precisamente análogos al caso que nos ocupa, los hemos utilizado sencillamente para ilustrar la proposición, que nos parece obvia, de que la facultad de la Comisión para conceder franquicias para el uso de aguas pú-

[4] Véase la Ley núm. 94 de 14 de mayo de 1936 (Leyes de 1936, (1) pág. 495).

blicas no conlleva, por sí sola, y en ausencia de otras disposiciones legislativas que expresa o tácitamente la confieran, la de entender en controversias respecto al derecho a usar aguas sin franquicia. Resta considerar, por lo tanto, si existen disposiciones legislativas que extiendan la jurisdicción de la Comisión sobre aguas públicas o privadas más allá del campo de la concesión, modificación y revocación de franquicias.

La Comisión, en la contestación([5]) que radicó en la Corte de Distrito de San Juan como respuesta al escrito de apelación de Russell & Co. insiste en que tiene amplios poderes sobre aguas públicas y privadas, derivados de la Ley de Aguas de 5 de febrero de 1886, según enmendada por la Ley de 12 de marzo de 1903 (Leyes de 1903, pág. 151).

La Ley de Aguas trata del dominio de las aguas terrestres, y de sus cauces y riberas, de la construcción de obras privadas de defensa en cauces públicos, de la desecación de lagunas y pantanos públicos y privados, de las servidumbres en materias de aguas y riberas, de los aprovechamientos comunes y especiales de aguas públicas, de la policía de las aguas, y de la competencia de los tribunales en materia de aguas. Originalmente, correspondía al Ministerio de Ultramar de España conceder ciertos aprovechamientos de aguas públicas y ciertos permisos para construir obras privadas en cauces públicos, determinar ciertos trámites respecto a la desecación de lagunas y pantanos privados, revisar las decisiones del Gobernador imponiendo servidumbres forzosas de acueducto, encargarse de la policía de las aguas públicas y sus cauces naturales, riberas y zonas de servidumbre, dictar reglamentos para la ejecución de la ley, y llevar a cabo la demarcación, apeo y deslinde de cuanto perteneciere al dominio público de acuerdo con la ley "sin perjuicio de la competencia de los tribunales respecto a las cuestiones de

---

([5])El artículo 82 de la Ley de Servicio Público exige a la Comisión radique una contestación al escrito de apelación.

propiedad y posesión." (⁶) Otras facultades correspondían al Gobernador y otras a funcionarios municipales. La Ley de 12 de marzo de 1903 dispuso que todos los derechos, facultades y deberes que de acuerdo con la Ley de Aguas correspondieran al Ministro de Ultramar quedaban traspasados al Consejo Ejecutivo, y los que correspondieran al Gobernador, al Comisionado del Interior.

■ Arguye la Comisión que todos los poderes que correspondían al Ministerio de Ultramar, y que pasaron al Consejo Ejecutivo en el 1903, corresponden ahora a la Comisión en virtud del artículo 38 del Acta Orgánica y el artículo 52 de la Ley de Servicio Público. El artículo 38 del Acta Orgánica, en adición al poder general de conceder franquicias que ya hemos discutido, sólo traspasó a la Comisión aquellas atribuciones del Consejo Ejecutivo "referentes a corporaciones de servicio público." Y el artículo 52 de la Ley de Servicio Público, que ya hemos copiado, sólo confirió a la Comisión poder para conceder franquicias para el aprovechamiento de las aguas públicas para fines públicos o privados. Carece de base, pues, la contención de la Comisión de que deriva de la Ley de Aguas poderes adicionales a los que expresamente le confiere el Acta Orgánica y la Ley de Servicio Público respecto a aguas públicas o privadas. Y como ya hemos visto, los poderes que el Acta Orgánica y la Ley de Servicio Público confieren a la Comisión se limitan a la concesión, modificación y revocación de franquicias para el uso de aguas públicas.

■ Pero hay más. De la propia Ley de Aguas que invoca la Comisión, resulta que el caso de autos es uno para la consideración de los tribunales de justicia, y no de agencias o tribunales administrativos. El artículo 254 de la Ley de Aguas reza así:

(⁶)Artículo 248 de la Ley de Aguas, Compilación de Estatutos y Códigos de 1941, pág. 181.

"Jurisdicción de los tribunales civiles.—Compete a los tribunales que ejercen la jurisdicción civil el conocimiento de las cuestiones relativas:

1. Al dominio de las aguas públicas y al dominio de las aguas privadas y de su posesión.

2. Al dominio de las playas, álveos o cauces de los ríos y al dominio y posesión de las riberas, sin perjuicio de la competencia de la administración para demarcar, apear y deslindar lo perteneciente al dominio público.

3. A las servidumbres de aguas y de paso por las márgenes, fundadas en títulos de derecho civil.

4. Al derecho de pesca."

El artículo 150 de la misma ley dispone lo siguiente:

"Concesiones se entenderán sin perjuicio de tercero.—Duración, cómo se determinará.—Toda concesión de aprovechamiento de aguas públicas se entenderá hecha sin perjuicio de tercero y dejando a salvo los derechos particulares; respecto a la duración de estas concesiones se determinará en cada caso según las prescripciones de la presente Ley."

Y, como ya hemos visto, el artículo 248 de la ley, que impone al Ministro de Ultramar (hoy el Consejo Ejecutivo) la obligación de llevar a cabo la demarcación, apeo y deslinde de cuanto perteneciere al dominio público de acuerdo con la ley, dispone que la determinación que así se haga respecto a lo que es de dominio público será sin perjuicio de la competencia de los tribunales respecto a las cuestiones de propiedad y posesión.

De los tres artículos a que acabamos de hacer referencia, y que están aún vigentes, se desprende claramente que la determinación de la naturaleza pública o privada de las aguas incumbe a los tribunales, y no a la agencia que concede franquicias para el uso de aguas públicas, antes el Ministerio de Ultramar, hoy la Comisión de Servicio Público. Según dispone expresamente el artículo 150, aunque apenas era necesaria la expresión, la concesión de una franquicia es sin perjuicio de los derechos particulares. Y según nos dice el artículo

254 y también afirma el 248, corresponde a los tribunales civiles, y no a los administrativos, dilucidar las cuestiones relativas a la propiedad y posesión de las aguas públicas y privadas.

Resulta, por lo tanto, que la Comisión de Servicio Público carecía de jurisdicción para dilucidar la cuestión que pretendió plantear mediante la orden para mostrar causa expedida al comenzar este caso, a saber, el derecho de Russell & Co. a usar las aguas de la Laguna Guánica, o lo que es lo mismo, la cuestión de la naturaleza y la extensión de los derechos públicos o privados en dichas aguas.

*Debe dejarse sin efecto nuestra opinión y sentencia del 27 de noviembre de 1945, y en su lugar dictarse otra confirmando la sentencia apelada.*