EL PUEBLO DE PUERTO RICO, representado por JESÚS T. PIÑERO, Gobernador, demandante y apelado, *v.* "EASTERN SUGAR ASSOCIATES, a Trust", HARRY E. HENNEMAN, HEYWARD E. BOYCE, HARRY N. BAETJER, LOUIS NAETZKER, A. H. S. POST, JAMES A. STEVENSON y CLARENCE K. BOWIE, "Trustees", demandados y apelantes.

Núm. 10286.—*Sometido:* Febrero 1, 1951. *Resuelto:* Mayo 29, 1951.

*E. T. Fiddler, José G. González, Tomás I. Nido* y *Fernando For-naris, Jr.,* abogados de los apelantes; *Hon. Procurador Ge-neral Víctor Gutiérrez Franqui* (*Vicente Géigel Polanco, ex Procurador General,* en el alegato) y *Carlos J. Faure,* abo-gados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-bunal.

Éste es un pleito en cobro de dinero instado por El Pue-blo de Puerto Rico contra la Eastern Sugar Associates. De conformidad con la Ley núm. 221, Leyes de Puerto Rico, 1942 ((1) pág. 1177), conocida como la "Ley Reglamen-tando la Industria Azucarera en Puerto Rico", la deman-dada solicitó y obtuvo franquicias que la autorizaron a ope-rar cuatro centrales para moler cañas pertenecientes a ella y a colonos independientes. Cada franquicia proveía en su sección 6 que para el ejercicio de la misma se pagaría anual-mente el 15 de marzo al Tesorero de Puerto Rico una suma

específica.(¹)   Durante los años de 1943 al 1947 la demandada operó sus centrales pero no pagó al Tesorero ninguna de estas cantidades.   Entonces El Pueblo instituyó ante el tribunal de distrito este pleito en cobro de dinero.   Luego de un juicio en los méritos, la corte inferior dictó sentencia a favor del Pueblo por la suma de $12,000, intereses y costas.   El caso se encuentra ante nos en apelación de dicha sentencia.

La apelante señala treinta y dos errores.   Sin embargo, los agrupa en seis puntos de argumentación: (1) no existe contrato alguno de la naturaleza de una franquicia o concesión entre la apelante y El Pueblo, que obligue a la primera a satisfacer las cantidades reclamadas en este pleito; (2) las llamadas franquicias constituyen licencias para continuar la operación de un negocio lícito sujeto solamente a una reglamentación razonable bajo el poder de policía; (3) El Pueblo, bajo el pretexto de ejercitar su poder de policía, no tenía autoridad para exigir regalías o licencias como condición previa a que la apelante ejercitase su derecho constitucional a dedicarse a un negocio, no importa si las regalías se exigían bajo el nombre de franquicia o de licencia; (4) la autoridad conferida por la Legislatura a la Comisión de Servicio Público para determinar regalías o derechos de licencia a ser pagados por la apelante, constituyó una delegación inconstitucional de sus poderes legislativos; (5) la Comisión no observó los requisitos del debido procedimiento de ley al fijar las regalías o derechos de licencia; (6) la apelante no está impedida de defenderse en este pleito. .

█  No es necesario que consideremos estos argumentos de la apelante.   Cuando radicó su solicitud para estas franquicias, la apelante hizo la siguiente manifestación: "Al hacer esta Solicitud, los Peticionarios no aceptan la validez de dicha Ley núm. 221, pero hacen hincapié en su nulidad y radican esta Solicitud bajo protesta y compulsión, y mera-

---

(¹) Estas cantidades eran $300, $600, $700 y $800 anuales, respectivamente, para las cuatro centrales.

mente para evitarse penalidades, en lo civil y en lo criminal, y pérdidas que pudieran ocasionársele con motivo de dicha Ley de no solicitar la franquicia allí provista; y no renuncian a ninguno de sus derechos, sino que por la presente expresamente se reservan todos los mismos, incluyendo en particular su derecho a cuestionar la validez y constitucionalidad de dicha Ley y de cualquiera de sus disposiciones, y de cualquier resolución, regla, o reglamento que se promulgue o de actuación efectuada bajo dicha Ley." Al aceptar las franquicias por carta del 23 de febrero de 1944, la demandada hizo una manifestación similar. (²) Entonces la apelante continuó haciendo negocios bajo estas franquicias. Las autoridades insulares no hicieron esfuerzo alguno para impedirle a la demandada moler sus propias cañas y las de colonos independientes, no obstante las reservas contenidas en sus manifestaciones antes copiadas. Por consiguiente el gobierno en efecto trató la carta del 23 de febrero de 1944

(²) Su carta del 23 de febrero de 1944 dice en parte como sigue: "Toda vez que bajo la Ley núm. 221 de 1942, la Comisión de Servicio Público sólo tiene facultad para expedir una franquicia o concesión a una compañía azucarera, según en dicha ley se define, para operar su negocio, y toda vez que nuestras cuatro centrales constituyen una empresa integral y por consiguiente, envuelven una sola compañía azucarera, según se define en la ley, suponemos, consideramos e interpretamos las dichas cuatro franquicias como una sola franquicia o concesión para la operación de nuestras cuatro centrales como una empresa integral. En tanto en cuanto la concesión de dichas franquicias puede considerarse como un certificado a nosotros de que podemos continuar operando nuestro negocio de elaboración de azúcar sin estar sujetos a las disposiciones penales de la Ley núm. 221 del 12 de mayo de 1942, aceptamos la concesión de las mismas. No obstante, en vista del hecho de que nosotros no solicitamos voluntariamente dicha concesión y de que los términos de la misma no nos confieren beneficio alguno, no admitimos que nos cobijan las condiciones contenidas en las secciones 3 a la 10 inclusive de dichas franquicias; en lo que a dichas condiciones concierne, sólo nos consideraremos obligados por ellas en caso de que una corte de jurisdicción competente finalmente determine que estamos sujetos a las mismas, en un procedimiento en que la cuestión haya sido adecuadamente suscitada. Además, con motivo de la amenaza y del temor a las penalidades de dicha Ley núm. 221, aceptamos dicha franquicia o concesión bajo compulsión y nos reservamos el derecho a obtener una determinación judicial de la facultad de la Comisión de Servicio Público para requerir tal franquicia y de la legalidad y validez de las condiciones o de cual-

como una aceptación válida de las franquicias según lo dispuesto en la sección 11 de las mismas.(³)

Las manifestaciones de la demandada de que se reservaba sus derechos a obtener una determinación judicial de la validez de las disposiciones de las franquicias eran superfluas. Ella tenía derecho a así actuar aun cuando no hubiera hecho tal reserva. Esto se hizo constar claramente tanto por este Tribunal en *Pueblo* v. *A. Roig, Sucrs.*, 63 D.P.R. 18, 37, como por la Corte de Apelaciones al confirmar la sentencia en dicho caso en *Roig* v. *People of Puerto Rico*, 147 F.2d 87, 92 (C.C.A. 1, 1945). Al mismo efecto, *W. W. Cargill Co.* v. *Minnesota*, 180 U. S. 452, 468.

Sin embargo, la demandada no atacó ninguno de los términos de sus franquicias en la forma provista por la ley. Al contrario, simplemente se cruzó de brazos e hizo caso omiso de las franquicias, por lo menos en tanto en cuanto la obligaban a pagarle al Tesorero las sumas anuales en ellas especificadas. En este pleito en cobro de dinero por primera vez la demandada impugna la validez de las franquicias, y se queja de la alegada falta de una audiencia en relación con la fijación de las regalías provistas en las franquicias y del monto de las mismas. Pero estas cuestiones no están adecuadamente ante nos. La demandada tenía derecho a levantarlas radicando ante el tribunal de distrito, a tenor con los artículos 78–90 de la Ley núm. 70, Leyes de Puerto Rico, 1917, Vol. II, y los artículos 50 y 51 de

quiera de las condiciones de la misma, y de cualesquiera condiciones futuras que pudieran imponérsenos bajo estas franquicias o en cualquier otra forma. Al aceptar bajo compulsión la concesión permanente arriba indicada, en forma alguna admitimos la validez de dicha Ley núm. 221 del 12 de mayo de 1942, sino que por el contrario nos reafirmamos en su nulidad y por la presente expresamente nos reservamos el derecho de impugnar la validez y constitucionalidad de dicha ley y de cualquiera de sus disposiciones, y de cualquier orden, regla, reglamento o decisión dictada o actuación efectuada bajo la misma."

(³) La sección 11 provee que la franquicia será aceptada dentro de los treinta días siguientes a su expedición y que "si dicha aceptación escrita no fuere radicada dentro de dicho período, esta franquicia será nula y sin valor alguno."

la Ley núm. 221, una solicitud para que se revisara la decisión u orden de la Comisión concediendo la franquicia y fijando sus términos. *Godreau & Co.* v. *Com. Servicio Público*, 71 D.P.R. 649; *Commission* v. *Havemeyer*, 296 U. S. 506; *South P. R. Sugar Co.* v. *Corte*, 62 D.P.R. 841; *Quilinchini et al.* v. *Comisión de Servicio Público de Puerto Rico et als., per curiam*, resuelto en junio 13, 1945; *En el Asunto, Etc. de Herminia Colón Vda. de Semidey*, 59 D.P.R. 248; *Baetjer* v. *Corte*, 58 D.P.R. 422; *Fleming* v. *Comisión de Servicio Público*, 57 D.P.R. 1; *Baetjer* v. *Corte*, 56 D.P.R. 596; *Municipio de Guayanilla* v. *Com. Servicio Público*, 51 D.P.R. 374; *White Star Bus Line* v. *Corte*, 52 D.P.R. 837. Véase *White Star Bus Line* v. *People of Puerto Rico*, 75 F.2d 889, 893, segunda columna (C.C.A. 1, 1935). *Cf. Russell & Co.* v. *Comisión Servicio Público*, 66 D.P.R. 372. Eligió no hacerlo así. Después de estar haciendo negocios por más de ocho años bajo estas franquicias, no puede ahora levantar, como una defensa al pleito instado por El Pueblo en cobro de dinero, cuestiones en cuanto a su validez, al procedimiento empleado para concederlas y al importe de las mismas. Tenía derecho la demandada a radicar en el momento oportuno un procedimiento ante la corte de distrito para que se revisaran las disposiciones de las franquicias para determinar si las mismas eran "razonables y de acuerdo con la ley", artículo 83 de la Ley núm. 70; *Commission* v. *Havemeyer*, supra; *Godreau & Co.* v. *Com. Servicio Público*, supra. Véase *Montana-Dakota Utilities Co.* v. *Northwestern Public Service Company*, 341 U. S. 246. No habiendo hecho esto, la demandada renunció a las contenciones que levanta ahora como defensa para este pleito en cobro de dinero.

Este caso es diferente al de *Roig*, en que la demandada se negó a solicitar la franquicia y El Pueblo instó pleito para que se le impidiera hacer negocios sin proveerse de la franquicia. Bajo aquellas circunstancias, Roig tenía derecho dentro del pleito de *injunction* a impugnar la consti-

tucionalidad de la Ley núm. 221, en tanto en cuanto se le aplicaba a ella. Pero aquí, como hemos visto, la demandada solicitó y obtuvo las franquicias. Por consiguiente venía obligada a utilizar el método estatutario provisto para la revisión de cualquiera de las disposiciones de la franquicia que ella deseare impugnar.[4]

*La sentencia del tribunal de distrito será confirmada.*

El Juez Asociado Sr. Negrón Fernández se inhibió.

---

[4] En cuanto a la diferencia entre una licencia y una franquicia, véanse *Frost* v. *Corporation Commission*, 278 U. S. 515, 519–521; *McPhee & McGinnity Co.* v. *Union Pac. R. Co.*, 158 Fed. 5, 10–11 (C.C.A. 8, 1907); *New State Ice Co.* v. *Liebmann*, 285 U. S. 262; *Madden* v. *Queens County Jockey Club*, 72 N.E.2d 697 (N.Y., 1947); *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58.

En cuanto a si la Ley núm. 221 requiere una franquicia para operar como empresa pública, según aquélla se distingue de una licencia, donde como ocurre aquí, una central sirve al público moliendo no solamente sus propias cañas sino también las de colonos independientes, véanse *Godreau & Co.* v. *Com. Servicio Público*, 71 D.P.R. 649; *Cía. Azucarera Toa* v. *Com. Serv. Público*, 71 D.P.R. 212.

En cuanto a la constitucionalidad de exigir una franquicia para operar una central azucarera con el fin de moler las cañas de colonos independientes, véanse *Pueblo* v. *A. Roig, Sucrs.*, 63 D.P.R. 18; *California Auto. Ass'n* v. *Maloney*, 341 U. S. 105, y el mismo caso en la corte inferior, 216 P.2d 882 (Calif., 1950); *Secretary of Agri.* v. *Cent. Roig Co.*, 338 U. S. 604, 614 *et seq.; Frost* v. *Corporation Commission*, supra; *New State Ice Co.* v. *Liebmann*, supra; *Munn* v. *Illinois*, 94 U. S. 113. *Cf. Davies Warehouse Co.* v. *Bowles,* 321 U. S. 144, y la opinión disidente en ese mismo caso en la corte inferior en 137 F.2d 201, 209 (Emerg. C. A., 1943); *United States* v. *Champlin Co.*, 341 U. S. 290.