White Star Bus Line, Inc., peticionaria, v. Corte de Distrito de San Juan, Hon. C. Llauger Díaz, Juez, demandada.

Núm. 1131.—*Sometido:* Febrero 21, 1938. *Resuelto:* Marzo 16, 1938.

*C. Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la peticionaria; *J. Valldejuli Rodríguez,* abogado de los interventores; *T. Torres Pérez,* abogado de la Comisión de Servicio Público.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Los dueños y conductores de ciertos automóviles con licencias como vehículos públicos apelaron para ante la corte de distrito de una orden dictada por la Comisión de Servicio Público, que tenía por objeto eliminar la competencia que éstos hacían a la White Star Bus Line, Inc. Los apelantes obtuvieron ante la corte de distrito una orden interlocutoria de

*supersedeas*. La compañía de transportes obtuvo entonces de este tribunal un auto de *certiorari* para revisar la referida orden interlocutoria.

La peticionaria descansa en los siguientes supuestos errores de procedimiento: Que la corte de distrito anuló la franquicia exclusiva de la peticionaria así como la orden apelada; que la decisión del juez de distrito que resolvió que la orden de la Comisión de Servicio Público es irrazonable y opresiva prejuzgó la apelación en sus méritos y privó a la peticionaria de su propiedad sin el debido proceso de ley y de su derecho de apelar de la sentencia definitiva; que el juez de distrito hizo caso omiso y violó el artículo 38 de la Carta Orgánica y los artículos 2, 48 y 49 de la Ley de Servicio Público de Puerto Rico; que el juez de distrito cometió error al resolver que la comisión no podía dictar la orden apelada sin una vista o sin notificar a los apelantes; que el juez de distrito ignoró e hizo caso omiso de las disposiciones del artículo 75 de la Ley de Servicio Público; que el juez de distrito basó su resolución en el fundamento de que la Comisión de Servicio Público intervino en el libre ejercicio de un negocio u ocupación y en el fundamento de que la reglamentación del uso de calles es una función municipal; que el juez de distrito decretó el *supersedeas* sin prueba alguna de que la orden de la Comisión de Servicio Público causaría a los apelantes daños graves e irreparables y también violó la doctrina relativa al balance de conveniencias; que el procedimiento adoptado por el juez de distrito no está en armonía con los principios de derecho y equidad y equivale a un abuso de discreción.

La franquicia de la peticionaria, "sujeta a las limitaciones, condiciones y restricciones que al presente o en el futuro (*sic*) puedan ser impuestas por la ley y a las que más adelante se especifican," le concedía autoridad exclusiva "para establecer, mantener y operar un servicio de ómnibus mediante paga para el traslado y transporte de pasajeros entre y dentro de las municipalidades de San Juan y Río Piedras y puntos intermedios." Disponía que la autoridad así concedida

sería "aplicable al transporte local dentro y entre las municipalidades de San Juan y Río Piedras solamente" y que "no se le consideraría como que prohibía el derecho a conceder autoridad a otras compañías de servicio público para operar ómnibus en rutas que se hallaren situadas en municipalidades distintas a San Juan y Río Piedras y que pasaran, entraran o salieran de dichas municipalidades de San Juan y Río Piedras." Se estipuló y convino específicamente que las "tarifas, rutas y condiciones del servicio" estarían "en todo momento sujetas a la reglamentación de la Comisión de Servicio Público."

En dos comunicaciones dirigidas a la Comisión de Servicio Público, de agosto 5, 1932, la White Star Bus Line, insistía en su derecho exclusivo al transporte de pasajeros "entre San Juan, Río Piedras, Martín Peña, Calle de Loíza, Avenida Fernández Juncos, Calle del Parque y viceversa." Alegaba que trece individuos que mencionaba, sin haber cumplido con ciertos reglamentos, transportaban pasajeros al tipo ordinario cobrado por las *guaguas* entre San Juan y Río Piedras. Solicitaba la suspensión de esa competencia sobre dicha ruta. En una comunicación final fechada el 9 de agosto, la White Star Bus Line se quejaba de una competencia similar por parte de otras seis personas entre San Juan, Río Piedras, la Avenida de Fernández Juncos, Martín Peña y las calles de Loíza y del Parque y viceversa. Solicitaba se suspendiera este servicio.

La parte pertinente de una orden de la comisión fechada octubre 15, 1932, lee así:

"Se ordena, además, y por la presente queda prohibido definitivamente el que ningún vehículo de motor que no haya sido previamente autorizado por esta Comisión se dedique al transporte público, regular y diario mediante paga en las rutas servidas mediante la franquicia expedida a la White Star Bus Line, Inc., a saber: San Juan a Río Piedras, Barrio Obrero, Calle Loíza, Calle del Parque, Avenida Fernández Juncos y Ciudad Nueva."

Este párrafo fué enmendado el 16 de marzo de 1935 para que leyera como sigue:

"Se ordena, además, y por la presente queda prohibido el que ningún vehículo de motor que no haya sido previamente autorizado por la Comisión, actúe, sirva, funcione u opere como porteador público en el transporte de pasajeros por asiento, brindando, ofreciendo, prestando o rindiendo su servicio al público en general mediante paga y por asiento entre puntos incluídos dentro de las rutas servidas por la White Star Bus Line, Inc.

"El hecho de que un vehículo de motor transporte a uno o más pasajeros de un sitio a otro dentro de las rutas servidas por la White Star Bus Line, Inc., mediante paga por asiento, constituirá prueba prima facie de una violación de las disposiciones de esta orden."

Según fué nuevamente enmendado el 4 de enero de 1938, lee del modo siguiente:

"Se ordena, además, y por la presente queda prohibido, a todo vehículo de motor que no hubiere sido previamente autorizado por esta Comisión, que actúe, sirva, funcione u opere como porteador público en el transporte de pasajeros por asiento, brindando, ofreciendo, prestando o rindiendo su servicio al público en general, entre los municipios de San Juan y Río Piedras o dentro de los municipios de San Juan o Río Piedras o entre puntos intermedios. El hecho de que un vehículo de motor actúe como porteador público, transportando pasajeros por asiento, de un sitio a otro, entre los municipios de San Juan y Río Piedras o dentro de los municipios de San Juan o Río Piedras o entre puntos intermedios, constituirá prueba prima facie de una violación de las disposiciones de esta orden."

La petición de los apelantes ante la corte de distrito solicitaba una orden interlocutoria que suspendiera los efectos de la orden apelada, en tanto se veía en su fondo la apelación. El juez de distrito no anuló ni la franquicia exclusiva de la compañía de transportes ni la orden apelada. Meramente declaró con lugar la petición de suspensión de la orden, fijó el importe de la fianza que debían prestar los apelantes a favor del Pueblo de Puerto Rico para responder del pago de cualesquiera daños provenientes de la suspensión de la

orden en caso de que ésta fuera finalmente confirmada, y decretó que la orden de suspensión no tuviera efecto antes de aprobarse tal fianza. Desde luego, ahora hablamos de la orden interlocutoria misma y no del razonamiento en que ella se basó. Admitiendo para los fines de la argumentación que el efecto de esta orden fué privar a la compañía de transporte de los beneficios y provechos que hubiera derivado del factor monopolista de su franquicia mientras se resolvía definitivamente la apelación en sus méritos, de ello no se desprende que la corte cometiera error al declarar con lugar la petición de los apelantes para que se dictara una orden interlocutoria de conformidad con las disposiciones del artículo 80 de la Ley de Servicio Público. (Véanse Leyes de 1917, Vol. II, pág. 529, y Leyes de 1935, pág. 181.)

█ Podría admitirse que el juez de distrito al exponer las razones que tuvo para expedir la orden interlocutoria no debió haber expresado una opinión incondicional respecto a la irrazonabilidad e invalidez de la orden apelada. Podría concederse que si el juez de distrito fué demasiado lejos al prejuzgar el resultado de la apelación, ello equivale a un error de procedimiento y no meramente a un error judicial. De esto no se deduce que la orden interlocutoria fuera de por sí un error de procedimiento.

██ El artículo 80 de la Ley de Servicio Público, supra, dispone:

"Ninguna apelación de ninguna orden de la Comisión en ningún caso surtirá el efecto de una suspensión (*supersedeas*) de la orden apelada, a menos que la predicha corte correspondiente en virtud de una orden interlocutoria diera efecto suspensivo a dicha apelación, mediante la prestación de la fianza correspondiente y previa vista a ese efecto. . . ."

Ésta es la única limitación que ese artículo fija a la discreción de la corte de distrito en torno a la cuestión que ahora está ante nos. Al conceder o denegar un *supersedeas* que habrá de tener efecto cuando se apruebe la fianza, el juez de distrito tiene por lo menos tanta discreción como la que

podría ejercer al conceder o denegar un *injunction pendente lite* en un pleito para impedir que se ponga en vigor una orden dictada por la comisión. "Para justificar la expedición de un *injunction pendente lite* debe desprenderse que existe una probabilidad razonable de que el peticionario tendrá éxito en la vista final." 51 C. J. 88, sec. 162; *Cambridge Electric Light Co.* v. *Atwill,* 25 F. (2d) 485; *Yangco* v. *Board of Public Utility Commissioners,* 31 Phil. Rep. 535, 539.

Según indica la Corte Suprema de los Estados Unidos en el caso de *Public Service Commission* v. *Wisconsin Telephone Co.,* 289 U. S. 67, 70: "La solicitud para que se expida un *injunction* preliminar no envuelve la determinación final del asunto en sus méritos." La conclusión definitiva de que la orden apelada es irrazonable y de que no está en armonía con la ley, indica suficientemente "una probabilidad razonable" en la mente del juez de distrito de que los apelantes "tendrán éxito en la vista final." Por tanto, a menos que la concesión de un *supersedeas,* de conformidad con el artículo 80, supra, haya de regirse por una regla distinta, la orden interlocutoria no debe ser revocada meramente porque el juez de distrito, provisionalmente, por lo menos, prejuzgó los méritos de la apelación. Sin embargo, nos sentimos renuentes a imputar al juez de distrito la intención de impedir una discusión ulterior de las cuestiones resueltas por él, y la consideración más deliberada de esas cuestiones, luego de celebrarse una vista del recurso en sus méritos. La orden interlocutoria en sí misma es contraria a la idea de la existencia de tal intención y debemos asumir que la compañía de transporte, de tener derecho a que se confirme la orden apelada, puede aún obtener una sentencia a ese efecto ante la corte de distrito. Tampoco podemos convenir en que la compañía de transportes ha sido privada de su propiedad sin el debido proceso de ley y de su derecho a apelar de una sentencia definitiva.

■ El tercer señalamiento—al efecto de que la corte de distrito hizo caso omiso y violó el artículo 38 de la Carta Orgánica y los artículos 2, 48 y 49 de la Ley de Servicio Público—descansa en la contención de que el juez de distrito cometió error al resolver que la orden apelada equivalía a una supuesta enmienda a la "Ley para Reglamentar el Uso de Vehículos de Motor en Puerto Rico, y para otros fines," aprobada el 13 de abril de 1916 (Leyes de ese año, pág. 144). En vista del hecho de que ésta y otras cuestiones que la peticionaria trata de levantar en el presente recurso de *certiorari* están aún pendientes de resolución final ante la corte de distrito, nos abstenemos de expresar criterio alguno respecto a los méritos de las mismas.

■ Empero, el sexto señalamiento al efecto de que la corte de distrito decretó la orden de suspensión sin prueba alguna de que la orden de la Comisión de Servicio Público causaría a los apelantes daños graves e irreparables y de que violó también la doctrina del balance de conveniencia, suscita una cuestión de procedimiento que al ser desarrollada adecuadamente, podría o no requerir una consideración más seria que la que le daremos en este momento.

La compañía de transporte en su alegato radicado ante la corte de distrito dijo:

"Alega la compareciente que es requisito indispensable y esencial para que esta Hon. Corte pueda decretar la orden de *supersedeas* solicitada el que se haya presentado al tribunal evidencia competente para justificar la conclusión de que a los apelantes se les causarían graves e irreparables daños si no se suspende dicha orden. En la ausencia de tal prueba la corte no puede, ni debe, expedir el *supersedeas*."

En una moción de reconsideración, la compañía de transporte señaló, como uno de los errores cometidos, que la corte de distrito no había resuelto las cuestiones levantadas por la compañía en su contestación y alegato. El juez al resolver esta moción se expresó así:

"Por último, se alega que este tribunal cometió error al no resolver ni considerar la alegación hecha en cuanto a la palabra *conveniencias,* ni siguió la regla de que para conceder el *supersedeas,* debe presentarse evidencia al tribunal que justifique que los apelantes sufrirían graves e irreparables daños, todo ello con menosprecio de la jurisprudencia citada por la postulante.

"No tenemos a mano los dos casos que cita: *Queens Borough Gas & Electric Co.* v. *Naltbie,* 3 P.U.R. (N. S) 381, 721 N. Y. Supp. 646; y *Kings County Lighting Co.* v. *Naltbie,* P.U.R. 1933 B. 337; pero estamos seguros por el título de estos casos, que en forma alguna se contraen a situaciones como las que se presentan en este caso."

Ninguna de las partes interesadas ha radicado alegato en este tribunal.

En *Matter of Kings County Lighting Co.* v. *Maltbie,* publicado en 152 Misc. 45, la Corte Suprema del Condado de Albany dijo, a la página 46 (bastardillas nuestras):

"La Comisión tiene facultad para autorizar, en un procedimiento para fijar tarifas, una rebaja o aumento inmediato, razonable y temporal, mientras se resuelve en definitiva el precio que más tarde habrá de cobrar una persona o corporación que esté sujeta a su jurisdicción a ese respecto. (Ley de Servicio Público, art. 72.) Esa tarifa temporal debe ser razonable y no resultar confiscatoria mientras esté en vigor. Su suspensión puede ser ordenada por la corte mediante *supersedeas* tan sólo cuando se desprenda que su vigencia ocasionaría daños graves e irreparables. (*Ley de Servicio Público, art. 23.*)"

No tenemos a la vista la Ley de Servicio Público de Nueva York. En *Matter of People's Gas & Electric Co.,* 122 Misc. 285, 286, encontramos, sin embargo, lo siguiente:

"Con posterioridad a la vista de la moción, los letrados de la Comisión de Servicio Público dirigieron una carta a este Tribunal llamando la atención de la corte hacia el inciso 2 del artículo 23 de la Ley de Servicio Público, que lee así: '2.—Ninguna orden que deje sin efecto o suspenda una de la Comisión de Servicio Público fijando la tarifa, precio, cargo o tarifa consolidada, será dictada por la Corte Suprema a menos que se notifique a las partes y se celebre una vista; y si se deja en suspenso la orden de la Comisión, la misma contendrá una conclusión específica basada en prueba so-

metida a la corte e identificada refiriéndose a ella, al efecto de que de lo contrario se ocasionarían daños graves e irreparables al peticionario, especificando la naturaleza de los mismos,' y citando dicho artículo como fundamento para no conceder la suspensión.

"No me parece que el inciso 2 de la sección 23, arriba citada, signifique que la corte que expide un auto de *certiorari* de conformidad con el artículo 78 de la ley de procedimiento civil deba conceder una orden de suspensión tan sólo después de celebrar otra vista. En *People ex rel. Croker* v. *Sturgis*, 39 Misc. Rep. 448, 450, la corte dijo: 'Que no fué el propósito de la Asamblea Legislativa que el juez de quien se solicita la suspensión deba en ningún caso concederla meramente porque encuentra un error de derecho . . . El intervenir a medias con las funciones de un tribunal apelativo estaría tan injustificado como imprevisto.' Tampoco pudo haber sido la intención de la Asamblea Legislativa que no pudiera haber una suspensión de las tarifas mediante un auto de *certiorari*, porque de haber sido ésa la intención legislativa, así se hubiera dispuesto. Por tanto, lo que el poder legislativo indudablemente intentó con el inciso 2 del artículo 23 de la Ley de Servicio Público, fué que el peticionario debe presentar prueba a la corte demostrativa de que si su contención es sostenida por la Appellate Division, se ocasionarían daños graves e irreparables al relator, especificando la naturaleza de los mismos.''

Parece que el Estado de Idaho tiene un estatuto similar, aunque más amplio. Véase *Mountain View Rural Tel. Co.* v. *Interstate Utilities Comm.*, 38 P. (2d) 40, 42. Nuestra Ley de Servicio Público no contiene tal requisito. Si, no habiéndose expresado la voluntad legislativa, el presente caso debe regirse por los principios en que se basan las disposiciones estatutarias de Idaho y Nueva York, es cuestión distinta. Para los fines de esta opinión, puede admitirse que en un caso de esta índole, y no habiéndose demostrado ningún otro buen fundamento, debe exigirse alguna prueba de daños irreparables como condición precedente a la concesión de una orden interlocutoria de *supersedeas*. Véase 3 Corpus Juris 1390, sección 1411.

Los apelantes, en la petición jurada en que solicitan una orden interlocutoria de *supersedeas,* alegaron: que ellos y

otros porteadores estaban siendo arrestados y procesados por infracciones de una orden *ultra vires* de la Comisión de Servicio Público; que sus vehículos estaban siendo confiscados y que se obstaculizaba la explotación de los mismos; que su libertad estaba en peligro. La veracidad de esas alegaciones, a excepción de la relativa a la nulidad de la orden de la Comisión de Servicio Público, fué, en ausencia de una negación suficiente, admitida por la compañía de transportes. El juez de distrito sostuvo la contención de los apelantes en torno a la nulidad de la orden de la Comisión de Servicio Público. Si el juez de distrito estaba en lo cierto en su conclusión tentativa, los hechos admitidos equivalían a daños irreparables dentro del significado de esa frase, conforme la misma es usada por las cortes de equidad con referencia a las cuestiones jurisdiccionales. De todos modos, al demostrarse que los daños que sufrirían los apelantes antes de poderse dictar una decisión final serían irreparables, unido a la probabilidad de que tal decisión de la corte de distrito fuera a su favor, bastaba para justificar la expedición de la orden de *supersedeas,* para tener efecto al prestarse la fianza por la suma fijada por la corte.

De la contestación de la compañía de transportes tomamos el siguiente extracto:

"Alega la peticionaria que si se decretara por esta corte la suspensión de la orden dictada por la Comisión de Servicio Público de fecha 4 de enero de 1938 se le ocasionarían daños considerables pues se le privaría de su propiedad ilegalmente, mientras que si, por el contrario, se deja en vigor la orden referida, los daños sufridos por los tres peticionarios serían mucho menores, por lo que, teniendo en cuenta que la Ley de Servicio Público expresamente dispone que las órdenes de la Comisión de Servicio Público se presumen correctas, válidas y razonables, y teniendo en cuenta la prohibición absoluta contenida en el artículo 80 de dicha Ley al efecto de que ninguna apelación de ninguna orden surtirá el efecto de una suspensión, la regla del balance de conveniencias exige que esta Honorable Corte deniegue la suspensión solicitada."

La compañía de ómnibus no presentó prueba en apoyo de esta contención durante la vista celebrada en la corte de distrito.

Dicha compañía dijo en su alegato radicado ante la corte de distrito:

"2. Alega la compareciente White Star Bus Line, Inc., que en todo caso esta Honorable Corte no debe decretar la suspensión solicitada por cuanto, aparte de que no se aportó evidencia de los daños que sufrirían los apelantes si la orden se mantiene en vigor durante el recurso de apelación, la doctrina del balance de conveniencias demanda de este tribunal que no se conceda dicha suspensión, por cuanto tal *supersedeas* irrogaría cuantiosos daños a esta compareciente, según así aparece de los autos (récord de la Comisión de Servicio Público, querellas presentadas ante dicho organismo, informes de sus inspectores, y el propio texto de las resoluciones), mientras que los apelantes han permanecido inexcusablemente pasivos e inactivos desde el año 1932 en que se dictó la primera orden y aún desde el año 1927 en que se concedió la franquicia exclusiva, por lo que no puede razonablemente estimarse que el cumplimiento de la orden durante el término de uno o dos meses que durará el recurso de apelación puede causarle daños ni siquiera comparables a los que causaría tal suspensión a esta compareciente, razón adicional por la cual esta Honorable Corte debe denegar la suspensión solicitada."

Una comunicación dirigida a la Comisión de Servicio Público el día 4 de enero de 1938, contenía la siguiente aseveración:

"3. Que la peticionaria ha venido siendo objeto de competencia ilegal, en el transporte de pasajeros, por parte de centenares de carros públicos, en abierta violación de los términos de la orden final de esta Comisión, a que se hace referencia en el hecho primero precedente, y de la franquicia concedida a esta peticionaria por esta Comisión, el día 9 de abril de 1927; y al presente tal competencia ilegal alcanza proporciones tan grandes que la peticionaria no puede resistirla; y, no obstante los esfuerzos realizados por esta Comisión y por las fuerzas de la Policía Insular para impedirla, debido a *cierta interpretación* que se ha dado a los términos de la orden final de esta Comisión, enmendada el día 16 de marzo de 1935, no ha

sido posible la convicción de los violadores de dicha orden, con perjuicio para esta peticionaria que se ve privada diariamente por tal motivo, de más de veinte mil pasajeros que representan una merma en sus ingresos de mil dólares por lo menos.''

La orden de la comisión, luego de exponer el contenido de la querella de la compañía de transportes, lee en parte como sigue:

''Esta Comisión, atendidas las razones expuestas en la petición radicada por la White Star Bus Line, Inc., en el día de hoy, y teniendo conocimiento de los hechos alegados a virtud de los informes rendidos por los inspectores de este organismo así como por las decisiones de los tribunales de justicia en aquellos casos que envuelven infracciones o violaciones de la orden final, enmendada de fecha 16 de marzo de 1935, y habida consideración asimismo de la franquicia concedida a la peticionaria en 9 de abril de 1927 y aprobada por el gobernador de Puerto Rico en 1º. de abril de 1927;

''RESUELVE Y ORDENA por la presente el que se enmiende la referida orden final dictada por la Comisión en 15 de octubre de 1932, según fué enmendada el 16 de marzo de 1935, de manera que quede redactada en la siguiente forma: . . .''

La orden de la Comisión de Servicio Público y la querella en que la misma se basa están fechadas el mismo día. No hallamos en los autos ningunos informes de los inspectores de la Comisión de Servicio Público correspondientes al período que medió entre la enmienda de 1935 y la de 1938. Si la orden se interpretara como una conclusión al efecto de que la compañía de transportes perdía más de mil dólares diarios, la inferencia obvia es que los vehículos públicos que hacían la competencia ganaban una cantidad similar, que perderían de no obtener la protección de un *supersedeas*. La compañía de transportes estaba protegida, por lo menos hasta cierto punto, por la fianza que los apelantes prestaron como condición precedente a la vigencia de la orden interlocutoria de *supersedeas*. La compañía no suscitó cuestión alguna ante la corte de distrito sobre la suficiencia de esa fianza. El juez de distrito no tuvo ante sí ninguna base satisfactoria para llegar a la conclusión de que la compa-

850

ñía de transportes sufriría perjuicios grandemente desproporcionados como resultado de la orden interlocutoria.

Hemos asumido, al igual que lo han hecho los letrados de la compañía de transportes, que el juez de distrito no estaba obligado a librar una orden interlocutoria como cuestión de derecho substancial (*as a matter of right*). En esa hipótesis, no hallamos un abuso claro de discreción ni una razón satisfactoria para alterar el resultado mediante un recurso de *certiorari*.

*Debe anularse el auto expedido y devolverse el caso.*

El Juez Asociado Señor Córdova Dávila no intervino.