South Porto Rico Sugar Company, peticionaria, *v.* Corte de Distrito de San Juan, Hon. Borinquen Marrero, Juez Interino, demandada.

Núm. 1.—*Sometido:* Diciembre 21, 1943. *Resuelto:* Enero 19, 1944.

*James R. Beverley, R. Castro Fernández* y *José López Baralt,* abogados de la peticionaria; *Hon. Procurador General Interino M. Rodríguez Ramos, A. F. Franco Cabrero, Procurador Auxiliar* y *Pablo Defendini,* abogados de la Comisión de Servicio Público de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En relación con el "arrastre y arrimo" de las cañas de azúcar de sus colonos, la Comisión de Servicio Público ha tratado de imponerle ciertas reglamentaciones a las compañías azucareras de Puerto Rico con las cuales la aquí peticionaria y Antonio Roig, Sucrs., S. en C., en el recurso núm. 2, no están conformes. Tanto éste como el otro son recursos de *certiorari* para revisar la resolución de la corte inferior denegando un *supersedeas* que mantuviera el *statu quo*

mientras las peticionarias tramitaban apelación contra las referidas órdenes de la Comisión de Servicio Público. El auto preliminar fué expedido en ambos casos al amparo de la Ley núm. 32 de 1943 (pág. 85) ya que la cuestión envuelta es de gran interés público por estar muchas centrales azucareras de Puerto Rico pendientes de la resolución de este caso para proceder a liquidar la zafra de 1943. Por convenio de las partes ambos recursos se vieron conjuntamente.

Veamos los hechos. La Ley núm. 221 de mayo 12 de 1942 ((1) pág. 1177) declaró empresas de servicio público a todas las compañías azucareras de Puerto Rico, les requirió la obtención de una franquicia y someterse a las reglamentaciones por parte de la Comisión de Servicio Público que dispone dicha ley. En agosto 25, 1942 la Comisión dictó una orden (*Exhibit F*) que se explica por sí misma y la cual transcribimos a continuación por ser de importancia a la resolución de este caso:

"En vista de que es prácticamente imposible debido a las dificultades por falta de tiempo disponible para hacer investigaciones y celebrar las audiencias correspondientes, la Comisión de Servicio Público se propone en las franquicias provisionales que se concedan en estos casos, el establecer para la próxima molienda o zafra del año 1943 las mismas condiciones y términos que aparecen de la Ley núm. 112 de 1937, tal y como fué enmendada posteriormente, con excepción de aquella parte de la sección 11 que trata del descuento para gastos de ensacado, flete, seguro marítimo y todo gasto relacionado con la venta del azúcar en el mercado de Nueva York. En cuanto a este particular la Comisión anuncia que se celebrarán audiencias sobre este extremo, las cuales se señalarán oportunamente.

"La Comisión de Servicio Público indica a las centrales azucareras que en o antes del día 10 de septiembre de 1942, envíen comunicaciones a esta Comisión expresando su aquiescencia o consentimiento a este plan y renunciando a cualquier posible derecho que puedan tener en cuanto a audiencias en lo relativo a valoración, margen de beneficio razonable o condiciones y términos de los contratos de molienda, y una vez haya transcurrido ese período y se hayan recibido esas comunicaciones, la Comisión señalará las audiencias correspondientes, *en cuanto a los gastos arriba señalados que se*

*mencionan en la sección 11 de la referida Ley núm. 112 de 1937, tal*
*como fué enmendada posteriormente.* (Bastardillas nuestras.)

"La zafra debe verificarse del 1º. de diciembre de 1942 al 30 de
junio de 1943, según las necesidades de cada región; DISPONIÉNDOSE
que, si cualquiera de las partes afectadas, ya sean centrales o colonos,
interesan una modificación en cuanto a este período de tiempo, pueden
dirigirse a la Comisión en tal sentido."

A esta orden, y en carta suscrita por su vicepresidente,
la peticionaria contestó en la siguiente forma:

"We have been notified of your order and suggestion dated
August 25, 1942, in which you advise that the Commission proposes
to establish for the next grinding or crop year (crop of 1942–43)
the same conditions and terms for liquidation by sugar mills to
colonos as appear in Act No. 112 approved May 13, 1937, as amended
by Act No. 213 approved May 15, 1938, with the exception of that
part of Section 11 which deals with the deduction to cover expenses
of bagging, freight, maritime insurance, commissions, insular excises
and all other expenses in connection with the sale of sugar in the
New York market, and that as to the matter of these deductions and
expenses, the Commission plans to hold hearing to determine the
actual amount of such expenses and costs. The companies manu-
facturing sugar in Puerto Rico are requested to waive for the crop
of 1942–43 their rights to a determination by this Commission of a
fair return to them under Act 221 of 1942, and to agree to liquidate
under the terms of old Act 112 of 1937 as amended in 1938 with
the exception that the various deductions of expenses mentioned in
Section 11 of said act as amended will be allowed in full.

"The undersigned sugar company understands that this means
that if the said waiver is filed, no other action will be taken by the
Commission (except such order as may be issued after hearing on
the matter of actual selling expenses deductible as above referred
to) *with respect to the terms of colono contracts of this company*
or with respect to the amount or amounts which may be earned by the
company for the year ending June 30, 1943 nor with respect to sugar
and molasses produced in that year, whenever marketed, and that
the company will be free so far as this Commission is concerned, to
operate during the 1942–43 crop and free with respect to sugar and
molasses produced in that year, with no greater burdens, restrictions
or limitations than would be imposed by Law No. 112 of 1937 as
amended by Law No. 213 of 1938, were these laws still in force,

except that the Commission will determine the actual selling expenses deductible as above referred to.

"If this understanding as to the effect of your proposed action is correct, this would serve to advise you that *if the Commission establishes and keeps in effect for the grinding year or crop year 1942–43 the same conditions and terms regarding liquidation to colonos as appear in Act No. 112 of 1937 as amended by Act No. 213 of 1938, with the exception of that portion of Section 11 thereof which deals with the deductions for expenses of bagging, freight, maritime, insurance, commissions, insular excises and all other expenses in connection with the sale of sugar in the continent* (in regard to which the company claims and will claim the right to deduct all such actual expenses), South Porto Rico Sugar Company *is willing for the crop year 1942–43, as a matter of voluntary cooperation with this Commission, to conform, and will conform so far as it may legally do so, to the conditions and terms of said Act No. 112 of 1937 as amended by Act No. 213 of 1938, with the exception of that portion of Section 11 above described.* As to that part of Section 11 dealing with the deductions above mentioned, it is understood that such expenses as above mentioned, will be fixed at their actual figures and regardless of whether the sugar is actually sold in New York or at other ports of the United States, provided, however, that if any more favorable terms and conditions are granted or permitted to any other sugar company in Puerto Rico, we shall be required to conform only to such more favorable terms and conditions.

"By submitting this waiver of a valuation and fixing of a fair return for the 1942–43 crop, the undersigned company does so with the understanding that this will not constitute a precedent for any future waivers.

"By advising this Commission as set forth herein, and by hereafter conforming to the terms and conditions of Act No. 112 of 1937 as amended by Act No. 213 of 1938 *to the extent above stated,* the undersigned company does not waive any of the reservations made in its application for a provisional franchise to this Commission but reasserts them, and it reserves the right to contest any order or finding of the Commission with which the company may not agree which may be issued with respect to deductions for expenses of bagging, freight, maritime insurance, commissions, insular excises and all other expenses in connection with the sale of sugar in the United States, *or any other order of this Commission which may be issued with respect to the 1942–43 crop inconsistent with the terms of this waiver.*

"It is also understood that by making this offer of voluntary cooperation with the Commission for the crop year 1942–43, the company does not concede that operation in accordance with the terms of this offer (i. e., under the terms and provisions of Law 112 of 1937 as amended with deduction of actual selling expenses as above set out), will give a fair return to the company on its business." (Bastardillas nuestras.)

Antonio Roig Sucrs., S. en C. aceptaron también la orden de la Comisión en términos parecidos a los anteriormente transcritos.

El primero de octubre de 1942 la Comisión publicó el siguiente aviso, el cual transcribimos en lo que es pertinente:

"Aviso de Audiencia Pública.—Caso No. J—6602.

"La Comisión de Servicio Público ha acordado celebrar audiencias públicas en relación con la Ley núm. 221 de 1942 y en las fechas que se indicarán más adelante con el fin de comprobar los gastos de cada una de las centrales en lo que se relaciona con el ensacado, flete, seguro marítimo, comisiones y todo otro gasto relacionado con la venta del azúcar en el mercado de Nueva York a fin de determinar qué suma de dinero podrá la central descontar a los colonos en conexión con tales gastos bajo la sección 11 de la Ley núm. 112 de 1937 tal y como fué enmendada por la Ley núm. 213 de 1938.

"En estas audiencias se presentará prueba sobre las cantidades que todas y cada una de las centrales deberá bonificarle a los colonos con respecto al arrastre o arrimo de las cañas *bajo la sección 7 de la Ley núm. 112 de 1937, tal y como fué enmendada por la Ley núm. 213 de 1938,* y se investigarán también los métodos usados para la transportación y arrimo de la caña.

"  *    *    *    *    *    *

"Octubre 20, 1942
    Central El Ejemplo
    Central Roig

"  *    *    *    *    *    *

"Octubre 26, 1942
    Central Guánica

"  *    *    *    *    *    * "

Se celebraron las vistas en los días señalados. El día 23 de diciembre de 1942, la Comisión, sin haber señalado ni cele-

brado vista posterior a las de octubre 20 y 26, aprobó los reglamentos sobre "arrastre y arrimo" (Exhibits A,B,C). Solicitaron las peticionarias la reconsideración y modificación de dichos reglamentos y la Comisión de Servicio Público, *sin señalar ni celebrar vista alguna,* dictó la orden de febrero 24, 1943 (Exhibit D) por la cual enmendó los artículos 2 y 3 del Reglamento sobre "arrastre y arrimo" y los artículos 6 y 11 del Reglamento General. Volvieron las peticionarias a solicitar la reconsideración y la Comisión, *sin señalar ni celebrar vista alguna,* dictó la resolución de abril 12, 1943 (Exhibit E) por la que de nuevo enmendó el artículo 2 del Reglamento sobre "arrastre y arrimo". El 22 de abril de 1943 las peticionarias apelaron para ante la Corte de Distrito de San Juan atacando la validez y solicitando la nulidad de dichos reglamentos. El 12 de mayo de 1943 las peticionarias radicaron ante la corte inferior sendas mociones de supersedeas, las cuales fueron declaradas sin lugar por no haber la Comisión elevado los autos del caso. Radicado el récord, las peticionarias radicaron una segunda moción de supersedeas cada una, y celebrada la vista, la corte inferior dictó la resolución de noviembre 29, 1943, que es objeto de este recurso, y que transcribimos a continuación, en sus partes pertinentes:

"POR CUANTO: se trata, a nuestro juicio de 'una orden de la Comisión estableciendo, fijando, cambiando o alterando precios, tarifas o cargos por el servicio público de arrastre y arrimo de caña'.

"POR CUANTO: la apelante no nos ha demostrado ni probado, como tampoco la prueba que consta en autos, que tal orden sea confiscatoria y que sus efectos la priven de su propiedad sin el debido proceso de ley, pues si bien se alega esto último, sin embargo, el que alegue privación de su propiedad debe probar de qué propiedad es que se le priva (*American Railroad Co.* v. *Comisión de Servicio Público,* 62 D.P.R. 359) y esto ni siquiera intentó demostrarlo la apelante, como tampoco por qué la orden recurrida resulta ser confiscatoria.

"POR CUANTO: el supersedeas aquí solicitado es un remedio estatutario y sólo puede obtenerse al darse estricto cumplimiento a todas las condiciones requeridas.

"Por cuanto: conforme alega la apelada, una orden de esta Corte suspendiendo los efectos de la orden u órdenes recurridas sólo tendría efecto prospectivo y habiéndose terminado la zafra de 1943, tal orden suspensiva resultaría académica y carecería de propósito práctico.

"Por cuanto: aun admitiendo, que la orden recurrida no fuere de la índole antes expuesta, creemos que aun así ejercitaríamos nuestra discreción más sabiamente no expidiendo el supersedeas solicitado.

"Por tanto: se declara sin lugar la 'Segunda Moción Solicitando Supersedeas' radicada por la apelante."

Aunque las peticionarias nos piden que entremos a considerar y resolver el caso en su fondo, o sea, que determinemos la validez de los reglamentos sobre "arrastre y arrimo", somos de opinión que no debemos ejercitar nuestra jurisdicción en estos casos a tal efecto, ya que la Corte de Distrito de San Juan debe, en primera instancia, oír las apelaciones establecidas, siguiéndose así los trámites regulares de la ley. Lo único que debemos resolver es, si erró o no la corte inferior al denegar el supersedeas en estos casos.

El artículo 80, Ley de Servicio Público (Núm. 70) de 1917 ((2) pág. 433), según enmendado por la Ley núm. 21 de 1935, pág. 181, dice así:

"Ninguna apelación de ninguna orden de la Comisión en ningún caso surtirá el efecto de una suspensión (supersedeas) de la orden apelada, a menos que la predicha corte correspondiente en virtud de una orden interlocutoria diera efecto suspensivo a dicha apelación, mediante la prestación de la fianza correspondiente y previa vista a ese efecto; Y disponiéndose, sin embargo, que en aquellos casos en que la apelación sea entablada contra una orden de la Comisión, estableciendo, fijando, cambiando o alterando precios, tarifas o cargos por cualquier servicio público, la apelación no suspenderá los efectos de la orden de la Comisión como supersedeas a menos que la compañía de servicio público afectada pruebe ante la Corte, previa la celebración de la vista correspondiente con la comparecencia de la Comisión, que la orden de ésta es confiscatoria y que sus efectos privarían a tal compañía de servicio público de su propiedad sin el debido proceso de ley; y si estos hechos se establecieren ante dicha corte, ésta podrá dictar una orden que será fundamentada con conclusiones

de hecho y de derecho suspendiendo los efectos de la orden de la Comisión; pero previamente requerirá a la compañía de servicio público para que preste una fianza a favor de El Pueblo de Puerto Rico, para beneficio de todas las partes perjudicadas por la falta de cumplimiento de la orden apelada durante el período de dicha suspensión y por la suma y en las condiciones que la corte disponga; será condición de dicha fianza el que ésta será para reembolsar a todas las partes perjudicadas por la suspensión de la ejecución de la orden de la comisión, en cualquier cantidad que hubiere sido cobrada por la compañía de servicio público durante el período de suspensión en exceso de lo que la Comisión de Servicio Público hubiere dispuesto, en el caso de que la orden de la Comisión fuere finalmente confirmada; Y *disponiéndose, además,* que para los fines de esta suspensión (supersedeas) la prueba que se someta a la consideración de la corte será la que aparezca del récord como presentada y sometida a la consideración de la Comisión de Servicio Público; y no se admitirá ninguna otra prueba que no hubiere sido previamente sometida a dicha Comisión.''

De acuerdo con los preceptos de este artículo cuando se apela de una orden de la Comisión ''estableciendo, fijando, cambiando o alterando precios, tarifas o cargos por cualquier servicio público'', no se concederá el supersedeas a menos que la compañía de servicio público pruebe que ''la orden es confiscatoria y que sus efectos privan a tal compañía de servicio público de su propiedad sin el debido proceso de ley.'' La corte inferior resolvió que la orden de la Comisión era de dicha naturaleza y que la apelante no probó que sea confiscatoria. La apelante señala esto como error. No es necesario que resolvamos si la orden establece, fija, cambia o altera precios, tarifas o cargos, ya que resolvemos que, séalo o no, la corte inferior erró al no conceder el supersedeas.

Asumiendo que la orden en cuestión caiga bajo las disposiciones generales del artículo 80, supra, es de aplicación lo resuelto en el caso de *White Star Bus Line, Inc.* v. *Corte,* 52 D.P.R. 837, donde se dijo:

''. . . Al conceder o denegar un supersedeas que habrá de tener efecto cuando se apruebe la fianza, el juez de distrito tiene por lo menos tanta discreción como la que podría ejercer al conceder o de-

negar un *injunction pendente lite* en un pleito para impedir que se ponga en vigor una orden dictada por la Comisión. 'Para justificar la expedición de un *injunction pendente lite* debe desprenderse *que existe una probabilidad razonable de que el peticionario tendrá éxito en la vista final.'* . . .

"... Para los fines de esta opinión, puede admitirse que en un caso de esta índole, y no habiéndose demostrado ningún otro buen fundamento, debe exigirse alguna prueba de daños irreparables como condición precedente a la concesión de una orden interlocutoria de *supersedeas.*" (Bastardillas nuestras.)

De manera que bajo la disposición general del artículo 80, supra, debe haber "alguna prueba de daños irreparables" y se exigirá, no ya lo que se exige en casos de alteración de precios, tarifas o cargos, o sea, que la orden sea confiscatoria y prive al peticionario de su propiedad sin el debido proceso de ley, sino que se pruebe una probabilidad razonable de que el peticionario tendrá éxito en la vista final del caso en apelación. Empero, las disposiciones finales del artículo 80, supra, proveen que:

"*Y disponiéndose, además,* que para los fines de esta suspensión (*supersedeas*) la prueba que se someta a la consideración de la corte será la que aparezca del récord como presentada y sometida a la consideración de la Comisión de Servicio Público, y no se admitirá ninguna otra prueba que no hubiere sido previamente sometida a dicha Comisión."

¿Tuvieron las peticionarias la oportunidad de presentar prueba alguna ante la Comisión? Ya hemos visto que la Comisión el 25 de agosto de 1942 dictó una orden, supra, indicando a las centrales la conveniencia de que renunciaran su derecho a las audiencias relativas a la valoración de sus propiedades y determinación del margen de beneficio razonable y que consintieran a un plan para establecer, para la zafra del año 1943, las mismas condiciones y términos que aparecen de la Ley núm. 112 de 1937, según enmendada, *con la única excepción* de aquella parte de la sección 11 de dicha ley que

trata de descuento por *gastos de venta y mercadeo*. Las peticionarias accedieron a renunciar su derecho a que se celebraran vistas pero fué exclusivamente a base de que en cuanto a los contratos de "arrastre y arrimo" continuarían rigiéndose por la Ley núm. 112 de 1937. El último párrafo de la orden de citación para la celebración de audiencias, supra, demuestra claramente que la Comisión no estaba citando para oír a las partes con el fin de fijar los términos de dichos contratos de acuerdo con la Ley núm. 221 de 1942, sino únicamente las cantidades que las centrales tenían que pagarle a los colonos de acuerdo con la Ley núm. 112 de 1937. Así vemos que en el récord taquigráfico de la vista celebrada el 26 de octubre de 1942, consta lo siguiente:

"El día 26 de octubre de 1942, se llamó este caso para la celebración de la vista pública en relación con los gastos de ensacado, flete, seguro marítimo y todo gasto relacionado con la venta de azúcares . . ."

Arguye la Comisión, sin embargo, que en dichas vistas se discutió ampliamente la cuestión de "arrastre y arrimo". Es cierto que la Comisión le hizo varias preguntas a un testigo de la peticionaria South Porto Rico Sugar Co. sobre dicha materia, y que asimismo a varios testigos de la peticionaria Antonio Roig Sucrs., S. en C., también se les interrogó al efecto, pero dichos interrogatorios deben considerarse en relación con el objeto de la convocatoria para las vistas, o sea, para la determinación de si las centrales estaban cumpliendo con la Ley núm. 112 de 1937 en cuanto al "arrastre y arrimo". Así vemos que el testigo Adalberto Roig, socio gestor de Antonio Roig Sucrs., insistió varias veces en que la vista no era para dicho fin. A la página 50 de la Transcripción de Evidencia, por ejemplo, el Sr. Roig hizo constar lo siguiente:

"Como yo no soy abogado, quizás no me expresé en forma correcta, pero quiero decir que hemos de objetar a que esta cuestión deba considerarse en esta vista."

Y el Presidente de la Comisión dijo:

"Vamos a oír la prueba reservándole la objeción y excepción salvaguardando sus derechos."

Véanse además las páginas 120 y 121; 168 y 206.

De los records en estos casos no consta que las preguntas sobre arrastre y arrimo que se hicieron lo fueron en relación con la Ley núm. 221 de 1942, y no en relación con las disposiciones de la Ley núm. 112 de 1937 según habían convenido las peticionarias con la Comisión. Como resultado de dicha vista se aprobaron reglamentos sobre arrastre y arrimo que fueron más tarde enmendados por las órdenes posteriores de la Comisión, supra, sin citarse ni celebrarse vista alguna en relación con dichas enmiendas. Asumiendo, sin resolverlo, que la orden original sea válida ¿puede sostenerse que no exista "una probabilidad razonable de éxito" para las peticionarias en sus apelaciones ante la corte inferior? La propia Comisión admite en su alegato, pág. 11, lo siguiente:

"Posteriormente, y en consideración a nuevas y numerosas solicitudes de modificación recibidas de centrales y colonos, la Comisión volvió a adoptar enmiendas a los reglamentos relativos a arrastre y arrimo por resolución de fecha 12 de abril de 1943. *Admitimos que esas enmiendas se adoptaron sin celebración de vista pública,* aunque al adoptarlas la Comisión se basó exclusivamente en la prueba aportada y en la investigación practicada a través de las vistas que sirvieron de base para la adopción de los reglamentos originales de diciembre 23 de 1942. Si se analizan bien esas enmiendas se verá que no alteran sustancialmente las condiciones establecidas en los reglamentos anteriores, *aunque admitimos que en algunos de sus aspectos pudieron tener un efecto levemente adverso para la peticionaria.*" (Bastardillas nuestras.)

A nuestro juicio esas actuaciones de la Comisión pueden ser declaradas por la corte inferior arbitrarias e irrazonables y que los reglamentos aprobados en su consecuencia lo fueron sin el debido proceso de ley. *Luce & Co.* v. *Junta de Salario Mínimo,* 62 D.P.R. 452; *Ohio Bell Telephone Co.* v. *Public Utilities Commission of Ohio,* 301 U.S. 292 (1936).

Ratificando lo resuelto en el caso de *Morgan* v. *United States,* 298 U. S. 468, citado por esta corte en el de *Luce & Co.,* supra, la Corte Suprema Nacional en el de *Ohio Bell Telephone Co.,* supra, por voz del Juez Cardozo, se expresó así:

"Las comisiones reguladoras han sido investidas con amplios poderes dentro de la esfera del deber que la ley les asigna. Aun en procedimientos cuasi-judiciales sus decisiones bien informadas y expertas reciben deferente consideración por las cortes cuando se ha llegado a ellas a través de la debida sumisión a las restricciones constitucionales. West Ohio Gas Co. *v.* Public Utilities Comm'n (No. 1), supra, p. 70; West Ohio Gas Co. *v.* Public Utilities Comm'n (No. 2), 294 U. S. 79; Los Angeles Gas & Electric Corp. *v.* Railroad Commission, 289 U. S. 287, 304. Es más, mucho de lo que hacen dentro de la discreción administrativa está exento de supervisión si se ha cumplido con dichas restricciones. Con más razón, por tanto, debe exigirse, cuando se han concedido tan amplios poderes, *que se mantenga totalmente la 'inexorable salvaguardia'* (St. Joseph Stock Yards Co. *v.* United States, 298 U. S. 38, 73) *de una audiencia pública e imparcial.* Morgan *v.* United States, 298 U. S. 468, 480, 481; Interstate Commerce Comm'n *v.* Louisville & N. R. Co., supra. *El derecho a tal audiencia es uno de los 'principios elementales de imparcialidad'* (Chicago, M. & St. P. Ry. Co. *v.* Polt, 232 U. S. 165, 168) *garantidos a cada litigante por la Enmienda Catorce como un requisito mínimo.* West Ohio Gas Co. *v.* Public Utilities Comm'n (No. 1), (No. 2), supra; Brinkerhoff-Faris Co. *v.* Hill, 281 U. S. 673, 682. Cf. Norwegian Nitrogen Co. *v.* United States, supra. No puede existir compromiso alguno so pretexto de mera conveniencia o facilidad, o debido al deseo natural de eliminar demoras molestosas, *cuando se olvida o se hace caso omiso de ese requisito mínimo.''* (Bastardilas nuestras.)

Somos de opinión que aun cuando los reglamentos sean considerados como el juez inferior estimó que lo eran—alteraciones de tarifas, precios, etc.—quedó demostrada prima facie la confiscación que requiere el artículo 80, supra. Ahora bien, siendo aplicable la disposición final de dicho artículo, resultaría absurdo requerirle al peticionario presentar "alguna prueba de daños irreparables" cuando el propio artículo.

80 le prohibe presentar otra prueba que no sea la presentada ante la Comisión, pues de acuerdo con los hechos de estos casos los peticionarios no tuvieron oportunidad de presentar prueba alguna, especialmente en cuanto se refiere a las enmiendas que posteriormente hizo la Comisión a los reglamentos sin celebrar nuevas vistas y oír a los peticionarios.

Es cierto que el artículo 80, supra, es claro en el sentido de que la expedición del "supersedeas" en estos casos es cuestión que descansa en la sana discreción de la corte inferior. Empero, de acuerdo con las circunstancias concurrentes en estos casos, somos de opinión que la corte inferior abusó de la discreción que le confiere dicho artículo.

*Debe revocarse la resolución dictada por la corte inferior el 29 de noviembre de 1943 y devolverse el caso para la celebración de una vista donde se fije el montante de la fianza y se expida la orden de supersedeas.*

El Juez Asociado Sr. Snyder no intervino.

EN MOCIÓN DE RECONSIDERACIÓN

Enero 25, 1944

La Comisión de Servicio Público ha solicitado reconsideremos y dejemos sin efecto la sentencia dictada en este caso el 19 de enero de 1944. Alega cuatro fundamentos principales los que expondremos y resolveremos en el mismo orden en que han sido planteados.

1. Que esta Corte solamente tuvo en consideración el récord de la audiencia celebrada en relación con la peticionaria, descartando así los records de las audiencias celebradas en relación con las demás compañías azucareras de la Isla.

De acuerdo con la convocatoria o aviso de audiencia pública expedido por la Comisión el primero de octubre de 1942, se fijó una fecha específica a la peticionaria para ser oída, o sea el 26 de octubre de 1942. A las demás centrales se les fijó otras fechas distintas para sus respectivas audiencias. No hay indicación alguna en dicha convocatoria de que se

oiría a todas las centrales en un solo día o sucesivos días en que todas estuvieran obligadas a comparecer. Siendo esto así, la peticionaria no estaba obligada a estar presente en otro día que no fuera aquél para el cual se le convocó.

Nuestra sentencia no tiene el alcance de negar a la Comisión la facultad de hacer una investigación general de las condiciones prevalecientes en todas las compañías azucareras de la Isla para luego determinar y fijar el alcance de la reglamentación adecuada y razonable a que puedan someterse todas las compañías. Es lógico que así se haga. Nuestra sentencia está limitada a resolver única y exclusivamente la cuestión de procedimiento de si la peticionaria tuvo o no la oportunidad de ser oída en relación con la materia objeto de reglamentación y sobre la cual no había convenido nada previamente con la Comisión según aparece expuesto con más amplitud en nuestra opinión anterior.

2. Que las mociones de reconsideración interpuestas por la peticionaria no requerían la celebración de audiencias y que las palabras usadas por la Comisión en su alegato de que las enmiendas hechas a los reglamentos fueron "levemente adversas a la peticionaria" no deben interpretarse en el sentido de que dichas enmiendas eran perjudiciales a la peticionaria.

Si los reglamentos no hubieran sido objeto de nuevas enmiendas a virtud de las mociones de reconsideración presentadas por la peticionaria, y hubieran sido declaradas sin lugar, desde luego que es obvio que no se requería ninguna nueva audiencia. Empero, si como admite la Comisión dichos reglamentos fueron enmendados y la peticionaria sostiene que lo fueron en sentido perjudicial y no levemente adversos como sostiene la Comisión, es muy obvio también que las audiencias eran un requisito previo a dichas nuevas enmiendas.

3. Que asumiendo que hubo las irregularidades en cuanto a la falta de audiencias, las mismas quedaron corregidas y subsanadas por actuaciones *posteriores* de la Comisión, o sea, la celebración de

una audiencia el día 13 de mayo de 1943, previa notificación a las centrales y aprobación de otro reglamento. Admite la Comisión que "Si bien es verdad que los documentos relativos a esas actuaciones no constaban ni podían constar en los autos correspondientes a este recurso, por tratarse de actuaciones posteriores a la fecha de la apelación entablada por la peticionaria contra los reglamentos adoptados hasta esa fecha, *este Hon. Tribunal podía y debía tomar conocimiento judicial de esas actuaciones.*" (Bastardillas nuestras.)

Nos parece que una mera lectura de este tercer fundamento es suficiente para demostrar su improcedencia. Si en el récord que tuvo ante su consideración la corte inferior, que es el mismo que vino ante nos a virtud del auto de certiorari no constaban ni podían constar las actuaciones a que hace referencia la Comisión, ¿cómo es posible que pudieran servir de base para resolver sobre la procedencia del supersedeas solicitado? Ni la corte inferior ni esta corte pueden tomar conocimiento judicial de que la Comisión expidió una nueva convocatoria para una audiencia a la cual se citó a la peticionaria y a las demás centrales de la Isla; y que dicha audiencia se celebró en una fecha posterior a la interposición del recurso en este caso.

Pero es que aún asumiendo que todo esto haya sucedido y que el reglamento haya sido de nuevo enmendado, hemos de asumir que dicho reglamento debe tener carácter prospectivo desde la fecha de su aprobación, 17 de junio de 1943, y por lo tanto los reglamentos anteriores según enmendados desde el 23 de diciembre de 1942 hasta el 17 de junio de 1943, pueden haber afectado perjudicialmente a la peticionaria, según ésta alega y desea demostrar ante la corte inferior.

Que no es cierto, como sostiene la Comisión, que los reglamentos anteriores al aprobado el 17 de junio de 1943, no tienen efecto alguno perjudicial a la peticionaria y que por tanto la apelación en el presente caso es académica, lo demuestra el hecho alegado por la peticionaria y admitido por la Comisión de que está pendiente ante la Corte de Distrito de Ponce un proceso criminal en contra del vicepresidente de

la peticionaria por no haber ésta cumplido con dichos reglamentos. Uno de los fines del supersedeas solicitado en este caso, es precisamente obtener la suspensión de los efectos de dichos reglamentos para evitar procesos criminales a que pueda estar sujeta la peticionaria mientras se tramita y resuelve la apelación pendiente ante la corte inferior. Hemos resuelto que el supersedeas debió concederse, empero esto no significa que si en definitiva la apelación es desestimada, no puedan continuarse los procesos pendientes e iniciarse otros nuevos contra la peticionaria por no haber cumplido con dichos reglamentos. Mientras tanto, sin embargo, debe mantenerse el *statu quo*. Si la apelación de la peticionaria es académica, según sostiene la Comisión, por haberse corregido las irregularidades alegadas por la peticionaria, es cuestión a ser resuelta por la corte inferior en la vista del caso en su fondo y no por esta corte en este incidente.

█ 4. Que la frase usada en nuestra opinión al efecto de que "quedó demostrada *prima facie* la confiscación que requiere el artículo 80, supra," en relación con los reglamentos aprobados no está justificada pues no habiendo estado la prueba del caso ante esta Corte no podíamos formar opinión en cuanto al carácter confiscatorio de los reglamentos.

El alcance de la frase antes mencionada debe entenderse limitado a lo que expresamente estábamos resolviendo en este caso, es decir, que de acuerdo con los hechos que aparecen de los autos las actuaciones de la Comisión podían ser declaradas por la corte inferior arbitrarias e irrazonables y que los reglamentos aprobados en su consecuencia lo fueron sin el debido proceso de ley. Es elemental en derecho constitucional afirmar que cuando no se actúa con el debido proceso de ley la actuación resulta confiscatoria. Fué en este sentido que usamos dicha frase, pues expresamente habíamos hecho constar en nuestra opinión anterior que no estábamos resolviendo el caso en su fondo ni determinando la validez de los reglamentos y nos limitamos a considerar y resolver el caso

escuetamente en cuanto a la procedencia del supersedeas solicitado por la peticionaria.

En cuanto a este aspecto de la moción de reconsideración, no tenemos inconveniente en hacer constar de nuevo que no hemos entrado a considerar en su fondo si los reglamentos aprobados por la Comisión son razonables o confiscatorios, cuestión que debe ser resuelta en primera instancia por la corte inferior en la vista de la apelación del caso. Lo que sí hemos resuelto es que en el ejercicio de los amplios poderes para reglamentar la industria azucarera de Puerto Rico concedidos a la Comisión de Servicio Público por la Ley núm. 221 de 1942, lo menos que puede exigírsele es un cumplimiento estricto del debido procedimiento de ley reconocido a todas las personas, naturales o jurídicas, por nuestra Carta Orgánica.

*Debe declararse sin lugar la moción de reconsideración.*

El Juez Asociado Sr. Snyder no intervino.